UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL B. LEVIN, SANTOS J. ROSARIO and
FELICIA ROSARIO,

                Plaintiff,

        -against-

SARAH LAWRENCE COLLEGE, LEE CHEN,
GUMLEY-HAFT LLC, and SCOTT MULLER,

                Defendants.

Civ. No. 1:23-cv-10236-LJL

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
GUMLEY-HAFT LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Scott Goldstein, Esq.
RESNICK & LOUIS, PC
520 White Plains Road, Suite 500
Tarrytown, New York 10591
(914) 435-7229
*Attorneys for Defendant,
Gumley-Haft LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................... .ii

PRELIMINARY STATEMENT ............................................................................................................... .1

ARGUMENT ......................................................................................................................................... .2

  I.    PLAINTIFFS FAIL TO OVERCOME GUMLEY HAFT'S SHOWING THAT THEIR CLAIMS ARE TIME-
      BARRED ............................................................................................................................. 2

    A.  *Plaintiffs' Attempt to Improperly Expand the Application of the Adult Survivors Act to
       Revive Time-Barred Claims is Without Legal Support* ........................................................ 2

    B.  *The ASA has No Application to the Facts as Pled* ......................................................... .4

    C.  *Plaintiffs' TVPA Claim is Untimely* ............................................................................. .7

  II.    PLAINTIFFS' NEGLIGENCE CLAIMS FAIL AS A MATTER OF LAW ........................................... .8

    A.  *As a Matter of Law, Gumley-Haft Did Not Owe Plaintiffs Any Heightened Duty Due to a
       "Special Relationship"* ................................................................................................ .9

  III.   PLAINTIFFS' NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM IS ALSO MERITLESS
      .......................................................................................................................... .15

  IV.   PLAINTIFFS HAVE NOT AND CANNOT PLEAD A VIABLE TVPA CLAIM ........................... .17

    A.  *Plaintiffs Cannot Demonstrate Knowing Financial Benefit* ........................................... .17

    B.  *Plaintiffs Cannot Allege Facts Showing that Gumley-Haft Participated in a TVPA Venture
      * ........................................................................................................................... .19

    C.  *Plaintiffs Cannot Allege that Gumley-Haft had knowledge of Their Alleged Trafficking
       by Ray* ..................................................................................................................... .20

  V.    LEAVE TO AMEND SHOULD BE DENIED .....………………………………………….22

CONCLUSION .................................................................................................................................... .24

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)…………………………………………………….……22

*Ayeni v. Cty. of Nassau*,
    18 A.D.3d 409 (2d Dept 2005)…...……………………………...………………………..9

*Boateng v. Bayerische Motoren Werke Aktiengesellschaft*,
    2022 U.S. Dist. LEXIS 169816 (E.D.N.Y. Sept. 20, 2022)…………………......…16, 17

*Brandy B. v. Eden Cent. Sch. Dist.*,
    15 N.Y.3d 297 (2010)…………………………….…………………………………...10

*Camp v. Loughran*,
    285 A.D.2d 483 (2d Dept 2001)……………………………………………………14

*Corsini v. Nast*,
    613 F. App'x 1 (2d Cir. 2015)……………………………………………….....…22

*Cort v. Marshall's Dep't Store*,
    2015 U.S. Dist. LEXIS 172611 (E.D.N.Y. Dec. 29, 2015)………………………...…11

*D'Amico v. Christie*,
    71 N.Y.2d 76 (1987)…………...……………………………………...……...……10

*Doe v. Abulaziz Bin Fahd Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)……………………………………….…………...10

*Doe v. Red Roof Inns, Inc.*,
    21 F. 4th 714 (11th Cir. 2021)………………………………………......………17, 19, 20

*Druschke v. Banana Republic, Inc.,*
    359 F. Supp. 2d 308 (S.D.N.Y. 2005)……………………………………….………...16

*Ellis v. Mildred Elly Sch.*,
    245 A.D.2d 994 (3d Dept 1997)……………………………….………...……......………...10, 11

*Espinal v. Melville Snow Contractors*,
    98 N.Y.2d 136 (2002)……………………………………………………………...……9

*Felske v. Hirschmann*,
    2012 U.S. Dist. LEXIS 29893 (S.D.N.Y. Mar. 2, 2012)…………………….……..…..7

*Funk v. Belneftekhim*,

2019 U.S. Dist. LEXIS 115819 (E.D.N.Y. July 11, 2019)………………………….. 8

*Hammond v. Lincoln Tech*.,
2012 U.S. Dist. LEXIS 10902 (E.D.N.Y. Jan. 30, 2012) ………………………..…10

*Higgins v. 120 Riverside Blvd. at Trump Place Condo.*,
2022 U.S. Dist. LEXIS 157466 (S.D.N.Y. Aug. 31, 2022)………...…………………16

*Ingrassia v. Lividikos*,
54 A.D.3d 721 (2d Dept 2009)………………………….………………………….…14

*ITT Corp. v. Lee*,
633 F. App'x 80 (2d Cir. 2016)……………...…………………………………….…8

*Jackson v. Lefferts Heights Hous. Dev. Fund Co., Inc.*,
38 A.D.3d 610 (2d Dept 2007)……………………………………………………2, 3

*J.B. v. G6 Hosp., LLC*,
2020 U.S. Dist. LEXIS 151213 (N.D. Ca. Aug. 20, 2020)……………………….…...20

*Johnson v. NYU Langone Health*,
No. 22-CV-09456 (JHR), 2023 U.S. Dist. LEXIS 176652 (S.D.N.Y. Sept. 30,
2023)……………...…………………………………...…………………………...5

*Klein v. Forster & Garbus, LLP*,
2021 U.S. Dist. LEXIS 120249 (E.D.N.Y. June 28, 2021)……...…………..………... 23

*Lafrantz v. St. Mary's Roman Catholic Church*,
2024 U.S. Dist. LEXIS 10154 (E.D.N.Y. Jan. 19, 2024)……………………….……...10

*Lawson v. Rubin*,
2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Apr. 29, 2018)……………………………..21

*Leib-Podry v. Tobias*,
2024 U.S. Dist. LEXIS 63266 (S.D.N.Y. Feb. 13, 2024)……………………...……….…5

*Luina v. Katharine Gibbs Sch. N.Y., Inc.*,
37 A.D.3d 555 (2d Dept 2007)…………………………………………...………9

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
425 F. Supp. 3d 959 (S.D. Ohio 2019)………………………………….....18, 19, 21, 22

*Maysonet v. KFC, Nat'l Mgmt. Co.*,
906 F.2d 929 (2d Cir. 1990)……………………………….……………..……....9

*Mintz v. State*,

47 A.D.2d 570 (3d Dept 1975)……………………………………………………………...15

*Moore v. Trinity Baptist Church,*
    161 A.D.3d 422 (1st Dept 2018)…………….………………………….……………...12

*Mortise v. U.S.,*
    102 F.3d 693 (2d Cir. 1996)……………………..……………………..……………….…..16

*Ruffolo v. Oppenheimer & Co.,*
    987 F.2d 129 (2d Cir. 1993)……………………………………………...………..22

*Sikhs for Justice v. Gandhi,*
    2014 U.S. Dist. LEXIS 78322 (E.D.N.Y. June 9, 2014)…………………….…………….8

*S.J. v. Choice Hotels Int'l, Inc.,*
    473 F. Supp. 3d 147 (E.D.N.Y. 2020)……………………………...………..20

*Spencer v. Omega Labs.,*
    2021 U.S. Dist. LEXIS 106750 (E.D.N.Y. June 7, 2021)…………………………….…23

*Taft v. Connell,*
    285 A.D.2d 992 (4th Dept 2001)……………………….……………………….......9

*Ungruhe v. Blake-Riv Realty LLC,*
    934 N.Y.S.2d 155 (1st Dept 2011)……….....................................................…………..2, 3

*Watson v. United States,*
    865 F.3d 123 (2d Cir. 2017)……………………………………………………….....8

*Zito v. Leasecomm Corp.,*
    2004 U.S. Dist. LEXIS 19778 (S.D.N.Y. Sept. 30, 2004)………………….…..……….. 23

**Statutes**

New York Penal Law Article 130 (McKinney's 2020 & Supp. 2024)…………………….2, 4, 5, 6

CPLR 214-j………………………….……………………………………………………..5

Trafficking Victims Protection Act, 18 U.S.C. § 1595………………...…6, 7, 8, 17, 18, 19, 21, 22

**Other Authorities**

https://www.nysenate.gov/legislation/bills/2021/S66.......................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL B. LEVIN, SANTOS J. ROSARIO and FELICIA ROSARIO,<br><br>             Plaintiff,<br><br>      -against-<br><br>SARAH LAWRENCE COLLEGE, LEE CHEN, GUMLEY-HAFT LLC, and SCOTT MULLER,<br><br>           Defendants. | Civ. No. 1:23-cv-10236-LJL |

## PRELIMINARY STATEMENT

While this action emanates from the undisputedly horrific conduct of Lawrence Ray ("Ray"), the instant action is not filed against Lawrence Ray. Instead, Plaintiffs seek to revive civil claims against Defendant Gumley-Haft, LLC ("Defendant" or "Gumley-Haft") that were otherwise long ago time-barred. In order to do so, they are required to plead facts that satisfy the relevant statutory provisions upon which they rely—the New York Adult Survivors Act, and the federal Trafficking Victims Protection Act.

As set forth below and within Gumley-Haft's initial moving papers, Plaintiffs have utterly failed to plead sufficient facts to support their claims. In addition, their claims against Gumley-Haft are substantively deficient as well. In short, Ray's illegal and reprehensible actions are not those of Gumley-Haft. As such, based upon the arguments set forth in Gumley-Haft's initial moving papers and set forth herein below, its dismissal motion should be granted.

### ARGUMENT

**I.      PLAINTIFFS FAIL TO OVERCOME GUMLEY HAFT'S SHOWING THAT THEIR CLAIMS ARE TIME-BARRED**

*A.      Plaintiffs' Attempt to Improperly Expand the Application of the Adult Survivors Act to Revive Time-Barred Claims Is Without Legal Support*

Within its moving papers, Gumley-Haft identified two primary deficiencies in plaintiffs' attempted reliance on the Adult Survivors Act ("ASA"). First, that the statute only serves to revive otherwise time-barred claims asserted against an abuser (here, Ray), or an abuser's enablers who failed to exercise control over the abuser's actions. Second, the enabler must have "enabled" one or more sexual offenses specifically proscribed by Article 130 of the New York State Penal Law.

In response, Plaintiffs misleadingly interpret standard negligent security case law as purported support to erroneously classify Gumley-Haft as an "enabler" of Mr. Ray's criminal conduct to trigger the application of the ASA.  In support of this argument, Plaintiffs cite two cases, *Jackson v. Lefferts Heights Hous. Dev. Fund Co., Inc*., 831 N.Y.S.2d 528 (2d. Dept 2007) and *Ungruhe v. Blake-Riv Realty LLC,* 934 N.Y.S.2d 155, 156 (1ˢᵗ Dept 2011),  arguing that a landlord's common-law duty to protect tenants and their guests from foreseeable harm, including third-party foreseeable conduct, somehow classifies Gumley-Haft as an "enabler" of Lawrence Ray's sexual offenses and/or establishes that Gumley-Haft had some measure of control over Lawrence Ray's actions to support application of the ASA to revive their claims.

However, there is nothing within either of these cases cited by Plaintiffs that 1) addresses ASA claims, or 2) sets forth some sort of legal standard identifying factors that might be used to classify a party as an "enabler".  In fact, the cases that Plaintiffs utilize to support this proposition have nothing to do with the ASA and instead, involve simple issues of negligent security.  They do not even remotely provide any guidance about being deemed as an "enabler" pursuant to the ASA.

2

*Jackson* involved a situation where the plaintiff was visiting a friend at the apartment building where his mother lived and encountered a man in the lobby who the plaintiff had known for several months.  The man had been "buzzed in" by a tenant.  The two men spoke for a short time.  The man then pulled out a gun and fired a single shot at the plaintiff causing him a severe spinal cord injury.  The case stated the obvious general rule that landlords have a common-law duty to take precautions to protect tenants from foreseeable harms, including a third-party's foreseeable criminal conduct.[1]  *Id.*  Nothing in the facts or holding of *Jackson* is instructive about the legal standard for determining whether a party is an "enabler" as referenced in the ASA, or whether Gumley-Haft would be considered an "enabler".

Similarly, *Ungruhe* involved a matter where the plaintiff tenant was assaulted and robbed in an apartment building owned and managed by defendants. Similarly to *Jackson, Ungruhe* also *held* that a landlord and managing agents have a common-law duty to take minimal security precautions to protect tenants and members of the public from the foreseeable criminal acts of third parties. *Id.*  Neither *Ungruhe* nor *Jackson* involves an instance where a plaintiff is seeking to revive a time-barred claim against an abuser pursuant to the ASA.  Neither *Ungruhe* nor *Jackson* contain any reference to a standard for reviving claims or a standard for classifying a party as an enabler in the context of reviving a time-barred claim pursuant to the ASA.  Plaintiffs have cited no caselaw to establish that Gumley-Haft was an enabler triggering application of the ASA to otherwise time-barred claims levied against it.

Finally, Plaintiffs' only purported factual support for its position is its speculative, conclusory, unsupported and unpled allegations that Gumley-Haft was passively silent while a dangerous convict (Mr. Ray) lived at the subject condo unit at the Waterford (the "Chen Condo

---

[1] In *Jackson,* the Court found that Defendants satisfied their duty to take minimal precautions against the foreseeable criminal acts of third parties.

Unit") amongst young adults.  Plaintiffs' opposition simply ignored Defendant's arguments made within its initial moving papers and below to establish that it was not an enabler. Namely, Gumley-Haft is not alleged to have had any relationship with Ray at all, let alone being his "enabler". Plaintiffs do not dispute that Gumley-Haft was not in a master-servant, principal-agent, employer-employee or even a landlord-tenant relationship with Ray.  Moreover, Plaintiffs' opposition does not dispute that Gumley-Haft did not exercise direct (or indirect) control over Ray.

Further, Plaintiffs' opposition also completely ignores Gumley-Haft's argument that it cannot reasonably be alleged to have enabled Ray with respect to his alleged acts of sexual abuse, regardless of whether those acts were plausibly claimed to have occurred in the apartment building managed by Gumley-Haft.  Gumley-Haft had no relationship whatsoever with Ray, as Chen was the owner of the subject condo unit.  Ray was, at most, a subtenant of Chen, or, at minimum, a trespasser that overstayed his welcome.

As such, as Plaintiffs have not identified any caselaw or facts to establish that Gumley-Haft was an "enabler" of Lawrence Ray's behavior, the ASA is not triggered to revive time-barred claims against Gumley-Haft as a matter of law.  On this basis, Plaintiffs' Complaint should be dismissed as against Gumley-Haft.

### B.    The ASA has no Application to the Facts as Pled

Next, in an improper attempt to trigger the ASA to revive their time-barred claims against Gumley-Haft, Plaintiffs seek to introduce new facts to overcome their clear failure to allege an Article 130 New York State Penal Law offense. They claim Ray "abus[ed]" Levin with "saran wrap"; "choked Santos and Daniel"; "held a knife to their genitals"; and "prostitute[ed]" Felicia. Dkt 49, p. 8. In attempting to introduce new, albeit unspeakable, facts to overcome their failure to allege a sexual offense as defined in Article 130 of the penal law, they concede that they need to do so.  In fact, for a claim to be revived pursuant to the ASA, "a defendant's underlying conduct

4

must 'constitute a sexual offense as defined in article one hundred thirty of the penal law' and have been 'committed against such person who was eighteen years of age or older.'" *See* N.Y. C.P.L.R. 214-j; *See also Johnson v. NYU Langone Health*, No. 22-CV-09456 (JHR), 2023 U.S. Dist. LEXIS 176652, 2023 WL 6393466, at *2 (S.D.N.Y. Sept. 30, 2023); *Leib-Podry v. Tobias*, 2024 U.S. Dist. LEXIS 63266, *19 (S.D.N.Y, Feb. 13, 2024).  In *Leib-Podry*, the Plaintiff's claim did not allege facts that would constitute a sexual offense under NY CPL 130 and thus, in that instance, the ASA was found to not apply.  *Id.*

Plaintiffs here are very imprecise with identifying the dates and locations of these occurrences.  Indeed, irrespective of the fact that none of these newly referenced instances of purported criminal conduct were pled in the Complaint, even to the extent that they are now referenced in Plaintiffs' opposition papers to the instant motion, they fail to specifically allege that any of these actions occurred at the Waterford/Chen's Condo Unit.

Plaintiffs also attempt to mislead the Court, claiming that the allegations regarding Felicia Rosario being prostituted occurred at Chen's Condo Unit, when, in fact, Plaintiffs cite to ¶87 of the Complaint which states, "[w]hile residing in North Carolina, the Plaintiff, FELICIA ROSARIO, was forced to engage in sex acts with men for the benefit of Lawrence Ray's trafficking enterprise."  Dkt.1, ¶87.  Obviously ¶87 of the Complaint refers to actions that took place after Rosario left Chen's Condo Unit and moved to North Carolina and it cannot be claimed that Gumley-Haft had any connection to anything related to the Plaintiffs residing in North Carolina.

Both the ASA text and its pertinent legislative history require a substantive causal connection between an assailant's acts, and injuries suffered at the hands of the assailant. The ASA revives claims premised only on "acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense

as defined in article one hundred thirty of the penal law." And the Sponsor's Memorandum made plain that the Legislature's intent was to allow alleged victims to seek redress "against their abuser *or their abuser's enablers.*" *See*  https://www.nysenate.gov/legislation/bills/2021/S66  [last accessed April 3, 2024].

Here, as argued in detail above, Gumley-Haft cannot credibly be characterized as an enabler. Both parties acknowledge the relationship between Gumley-Haft and Ray was, at most, one of managing agent and visitor. Ray was not alleged to be a Gumley-Haft employee, agent, vendor, or contractor. The only opportunity for Gumley-Haft to control Ray's conduct was if, and/or, when, it had notice Ray was engaged, or likely to engage, in dangerous criminal conduct while in Chen's Condo Unit.

Moreover, contrary to the allegations in the Complaint which state that Gumley-Haft's alleged violations of the Trafficking Victims Protection Act (TVPA) are that Gumley-Haft harbored and assisted **only** Lawrence Ray in connection with the sex trafficking claims (see Dkt. No. 1, ¶¶ 62, 150 and 161), in opposition, Plaintiffs now misleadingly attempt to conflate and integrate claims of Chen's purported criminal conduct as part of their TVPA claims related to Lawrence Ray's conduct.

Gumley-Haft respectfully submits that Chen's purported criminal conduct is **not** synonymous with or interchangeable with Lawrence Ray's criminal conduct.  Indeed, as argued in the initial moving papers, Plaintiffs' Complaint contains no allegations that Ray engaged in specific criminal conduct of any sort, let alone conduct violating Article 130 of the Penal Law. while he was residing in Chen's Condo Unit. Moreso, references in Plaintiffs' opposition papers to Levin and Santos Rosario being strangulated were not plead in the Complaint.  As a result, those claims cannot and should not be considered on this motion.

6

In short, Plaintiffs' claims as against Gumley-Haft do not fall within the ambit of the ASA. The very commendable intention of the ASA is to hold assailants and their enablers accountable despite the passage of time. However, this case does not present such a scenario as there are simply no facts to support the proposition that Gumley-Haft was an "enabler" as intended pursuant to the ASA.

### C. Plaintiffs' TVPA Claim is Untimely

Aside from making the conclusory argument, with no legal or factual support, that the ASA resurrects all claims (federal and state) arising from the sexual abuse experienced by Plaintiffs, including the TVPA claims, Plaintiffs made no effort to affirmatively respond to, or oppose, Gumley-Haft's argument that the ASA does not revive Plaintiffs' TVPA claims.  By failing to affirmatively respond to Gumley-Haft's argument that the ASA does not revive time-barred federal claims, plaintiffs concede the point.  *Felske v. Hirschmann*, 2012 U.S. Dist. LEXIS 29893, at *9 (S.D.N.Y. Mar. 2, 2012) (plaintiff "effectively concedes a defendant's arguments by his failure to respond to them").

Instead, Plaintiffs speciously argue their TVPA claim is independently timely, but this argument fails for two reasons. First, Plaintiffs iassert that the TVPA claim "do[es] not accrue until the victims have escaped from his or her traffickers," and thus, they incorrectly contend, the claim did not accrue until they "escape[d]…Ray's abuse…well after November 2013." Dkt.49 at 9.  As a threshold matter, unlike a circumstance where a sex worker is, literally, held captive by the trafficker, here, Plaintiffs do not, and cannot, credibly plead that their freedom of movement or communication was shackled or restricted.

Second, without any other recourse, Plaintiffs urge that there should be an equitable toll of the otherwise applicable limitations period, but this argument is equally unavailing. Dkt. 49 at 10-12. Their equitable tolling arguments lack merit for several reasons. First, "[e]quitable tolling is

warranted only in rare and exceptional circumstances." *ITT Corp. v. Lee*, 633 F. App'x 80, 84 (2d Cir. 2016). A limitations period may be equitably tolled only if plaintiffs can establish "two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quotation omitted).

Plaintiffs' Complaint contains no facts that even begin to address, let alone establish, either element. They do not propound any facts that demonstrate they have been pursuing their rights diligently, nor do they provide the requisite "extraordinary circumstance." A cursory review of the few cases where an equitable toll has been allowed to demonstrate the futility of Plaintiffs' assertions here. For instance, the Court in *Funk v. Belneftekhim*, 2019 U.S. Dist. LEXIS 115819, at *5 (E.D.N.Y. July 11, 2019), summarized the facts set forth in the Complaint before it that could support an equitable toll:

> [Plaintiffs] were drugged, kidnapped, flown to Belarus, held captive, and tortured for 383 and 483 days, respectively. Plaintiffs have also alleged that they deferred commencing litigation until shortly after [plaintiff] Funk became a United States citizen in light of defendants' death threats against Funk and the role [plaintiff] Zeltser's United States citizenship played in the diplomatic intervention of the United States government that helped secure plaintiffs' release.

*Id.*; *see also Sikhs for Justice v. Gandhi*, 2014 U.S. Dist. LEXIS 78322, at *13 (E.D.N.Y. June 9, 2014) (rejecting an equitable toll based upon the paucity of relevant pleaded facts, the Court commented, "[a]mong the myriad deficiencies in the Amended Complaint is the total lack of detail as to the circumstances surrounding [plaintiff] Jasbir's alleged torture. This includes when the torture actually occurred. All the Court can tell from the Amended Complaint is that the alleged torture occurred at some point between 1984 and 2002, when Jasbir came to the United States"). Based on these arguments and those set forth in Gumley-Haft's initial moving papers, Plaintiffs' TVPA claim is time-barred, is not subject to any toll, and should be dismissed.

## II. PLAINTIFFS' NEGLIGENCE CLAIMS FAIL AS A MATTER OF LAW

A.      **As A Matter of Law, Gumley-Haft Did Not Owe Plaintiffs Any Heightened Duty Due to a "Special Relationship"**

In opposition to the instant motion, Plaintiffs next erroneously argue that the facts demonstrate a special relationship between Plaintiffs and Gumley-Haft which created a heightened duty of care.  However, this argument is unavailing.

In its moving papers, Defendant Gumley-Haft acknowledges that property owners owe a duty to exercise reasonable care to protect others only from reasonably foreseeable criminal or dangerous acts committed by third persons on the premises. *Ayeni v. Cty. Of Nassau*, 18 A.D.3d 409 (2d Dept 2005)*; Luina v. Katharine Gibbs Sch. N.Y., Inc.*, 37 A.D.3d 555, 536 (2d Dept 2007); *Maysonet v. KFC, Nat'l Management Co*., 906 F.2d 929, 930 (2d Cir. 1990) ("Under New York law a proprietor is not liable for the intervening criminal acts of another unless such acts were reasonably foreseeable").

The duty to protect a plaintiff from foreseeable harm caused by third persons is limited to conduct the owner "had the opportunity to control," and of which the owner "was reasonably aware." *Taft v. Connell*, 285 A.D.2d 992 (4th Dept 2001).

Here, Gumley-Haft is not the property owner, it is merely the managing agent for the facility, contracted by the owner.  A contractual obligation does not generally "give rise to tort liability in favor of a third party" (*Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 138, 773 N.E.2d 485, 746 N.Y.S.2d 120 [2002]). However, a contractor is potentially liable in tort to third persons, where the contracting party "launche[s] a force or instrument of harm," where the plaintiff suffers injury as a result of reasonable reliance on the defendant's continued performance of a contractual obligation, or "where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (*id*. at 140). None of this involves imposing a heightened duty of care upon Gumley-Haft and none of these *Espinal* factors are present here to impose a duty on

9

Gumley-Haft as the property manager for the property.  Similarly, none of the cases cited by Plaintiffs support their conclusion that Gumley-Haft owes or owed a heightened duty of care to the Plaintiffs.

The question whether a defendant breached its duty as a property owner, "entails a determination as to whether the property owner ha[d] either actual or constructive notice of the likelihood of dangerous conduct by a third person." *Ellis v. Mildred Elly Sch.*, 245 A.D.2d 994, 996 (3d Dept 1997).  [U]nanticipated third-party acts causing injury upon a [plaintiff] will generally not give rise to . . . liability in negligence absent actual or constructive notice of prior similar conduct. As initially argued, it must be established that [the defendant] authorit[y] had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated." *Brandy B. v. Eden Cent. Sch. Dist.*, 15 N.Y.3d 297, 302 (2010) (quotations omitted); *D'Amico v. Christie*, 71 N.Y.2d 76, 85 (1987) (landowners only "have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control") (emphasis supplied); *Hammond v. Lincoln Tech.*, 2012 U.S. Dist. LEXIS 10902, at *22 (E.D.N.Y. Jan. 30, 2012) ("a property owner must have actual or constructive notice of the likelihood of the dangerous conduct").

Moreover, the conduct of which a defendant is alleged to have notice of must be "misconduct . . . of the same kind that caused [plaintiffs'] injury." *Doe v. Abulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674, 681 (S.D.N.Y. 2014) ("The prior misconduct . . . must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient."). Finally, it is well established that detailed factual assertions, rather than conclusory allegations, are required to withstand a motion to dismiss. *Lafrantz v. St. Mary's Roman Catholic Church*, 2024 U.S. Dist. LEXIS 10154, at *13 (E.D.N.Y. Jan. 19, 2024) ("New York courts have

10

held that in the context of sexual assault allegations, a plaintiff must in its complaint provide factual allegations concerning the tortfeasor's propensity for sexual assault, as well as factual allegations suggesting that the defendant knew or should have known of any such prior acts by the tortfeasor.") (quotation omitted); *Cort v. Marshall's Dep't Store*, 2015 U.S. Dist. LEXIS 172611, at *14 (E.D.N.Y. Dec. 29, 2015) ("conclusory allegation" that defendant "knew or should have known" of assailant's propensity for conduct causing injury "d[id] not sufficiently allege that [defendant] was or should have been on notice of [assailant's] potential to commit an assault").

Therefore Gumley-Haft's duty, if any, to protect the Plaintiffs from any threat of harm Ray presented could only be triggered by conduct specified in the Complaint which occurred at the Waterford. Moreover, Gumley-Haft's duty (to the extent it has such a duty) to protect individuals on the Waterford's premises from the dangerous acts of third parties arises only when it was "reasonably aware of the need" for such protection. See *Ellis*, 245 A.D.2d at 996 (whether property owner breached duty "entails a determination as to whether the property owner ha[d] either actual or constructive notice of the likelihood of dangerous conduct by a third person").

Gumley-Haft demonstrated in its underlying Memorandum in Support of the Motion to Dismiss that Plaintiffs' allegations were insufficient to show that it was on notice of any threat of serious criminal conduct that Ray's presence posed. Plaintiffs seek to gloss over the fact that none of the allegations set forth in Plaintiffs' Complaint serve to establish that Gumley-Haft had actual or constructive notice of Ray's potential to engage in acts of sexual abuse. Instead, Plaintiffs focus on their foreseeability arguments. Dkt. 49 at 14-17. Plaintiffs' speculation as to what arguably could have been foreseeable, however, does not equate with what Gumley-Haft knew or should have known, particularly with respect to Ray's potential to engage in acts of sexual abuse. This speculation, in effect, skips the threshold steps that Plaintiffs are required to establish to prove its negligence claim against Gumley-Haft. *Moore v. Trinity Baptist Church*, 161 A.D.3d 422, 423

(1st Dept 2018) (absent "prior notice of a dangerous condition, it was not foreseeable that [the failure to move plaintiff] would have placed him in danger").

Incredulously, Plaintiffs attempt to expand Gumley-Haft's duty by claiming that based on unidentified, unspecified, and undated complaints about noises and other concerns, Gumley-Haft should have performed an independent full-scale investigation of Mr. Ray, which they claim would have resulted in putting Gumley-Haft on notice that Mr. Ray was engaging in forced labor and sex trafficking – although notably he had no prior history of engaging in such conduct.

As previously argued, Plaintiffs' Complaint does not plausibly allege facts suggesting that Gumley-Haft was "on actual or constructive notice of the sex trafficking and other wrongful activities to which Plaintiffs were purportedly being subjected to within Chen's Condo Unit.  With respect to Plaintiffs' claim that Gumley-Haft had actual notice, they allege only:

• "Upon information and belief, on dozens (if not hundreds) of occasions, Carlos Pagan (and other doormen) witnessed groups of SARAH LAWRENCE COLLEGE students entering and exiting LEE CHEN's condominium unit under management and supervision of GUMLEY-HAFT, LLC, at all hours of the day and night." Id. at ¶ 178.

• "Upon information and belief, the Plaintiff, Felicia Rosario would leave the building under management and supervision of Gumley-Haft, LLC at all hours, often not wearing clothing appropriate for the weather.  Id. at ¶ 180.

• "Upon information and belief, various agents, servants and representatives of Gumley-Haft, LLC, including, but not limited to Carlos Pagan, were aware of the above-described suspicious activities against Plaintiffs." Id. at ¶ 181.

. • "The Defendant, Gumley-Haft, LLC was also put on notice of suspicious wrongdoings involving the Plaintiffs, taking place at the condominium unit located at the Waterford Building at 300 East 93rd Street, Apt 15E in Manhattan by complaints made by other residents."  Id. at ¶ 182.

. • "Upon information and belief, the condominium board wrote a complaint letter about the noises that were emanating from the condominium unit located at the Waterford Building at 300 E. 93rd Street, Apt. 15E in Manhattan, as a result of Plaintiff's abuse on the premises, yet Gumley-Haft LLC did nothing to intervene or protect Plaintiffs."  Id. at ¶ 183

Similarly, in opposition to the instant motion, Plaintiffs just reiterate the same allegations that Gumley-Haft has already cited which do not plausibly support their claims of constructive

notice. Plaintiffs speculate that Gumley-Haft acquired constructive notice that Ray was engaging in sex trafficking and labor trafficking in Chen's Condo units from the facts that 1) Felicia Rosario sometimes was "not wearing clothing appropriate for the weather" (it is unclear what that actually means), 2) upon information and belief doorman Pagan was aware of "suspicious activities against Plaintiffs" (without any description or explanation of these "suspicious activities"), 3) that college students visited Chen's Condo Unit, and 4) the Condo Board made an unspecified "noise" complaint.  See Dkt. 1 at ¶¶178, 180-183.

Gumley-Haft continues to contend that the above allegations contain no specifics and do not plausibly plead that Gumley-Haft should have been on constructive notice that Ray was engaging in sex trafficking or labor trafficking in Chen's Condo unit.  There is no logical or legal connection between notice that Ray was in the building, and knowledge at that time that Ray was "a dangerous man."  On the contrary, it would not be considered unusual behavior for young adults to be the subject of noise complaints or to be dressing in a manner that others may deem inappropriate for the weather.

Further, Plaintiffs' Complaint and opposition papers fail to identify: 1) any instances where building residents alerted Gumley-Haft that Ray was "harming" anyone within the Chen Condo Unit, 2) who reported/complained about Ray to the Waterford; 3) when such a report/complaint was made; 4) to whom it was made; 5) how Ray's and/or Plaintiffs' presence at the Waterford - as invited guests of Chen - would alert Gumley-Haft that Ray was "harming" people inside Chen's Condo Unit; and/or 6) what particular potential "harm" Gumley-Haft was or should have been allegedly aware of.  Plaintiffs' Complaint also does not allege that anyone told anyone at Gumley-Haft about the abuse that was occurring. The fact that Plaintiffs and Ray regularly entered and exited the Waterford through the main entrance when they were known to have been invited by Chen, a condo unit owner without more, is simply insufficient to support a finding that Gumley-

Haft had actual or constructive notice that Ray was engaged in sex trafficking and forced labor. Had Gumley-Haft taken that highly speculative leap and took steps to presume that there was wrongdoing going on in the Chen Condo Unit based on no actual evidence of any wrongdoing going on in the Unit, Gumley-Haft risked a potential harassment lawsuit from Chen, among other potential risks.

Gumley-Haft also respectfully submits that despite Plaintiffs' arguments to the contrary, the Complaint fails to contain sufficient facts to set forth a claim that it should have been foreseeable to Gumley-Haft that Ray was engaging in sex trafficking and forced labor in the Chen Condo Unit. Plaintiffs base this claim on the alleged facts that 1) Ray entered the condo through the Waterford's main entrance, 2) multiple young adults also entered the Waterford through the front door, 3) Felicia Rosario was apparently observed, at times "not wearing clothing appropriate for the weather" and 4) there was a complaint letter about noise coming from the Chen Condo Unit. These purported facts provide no basis to establish that Gumley-Haft should have had constructive or actual notice of any wrongdoing in the Chen Condo Unit or that it should have foreseen that sex trafficking and forced labor was going on within the Chen Condo Unit.

In other words, not only are these allegations conclusory, speculative and insufficient to state a viable negligence claim, but they fail to overcome the settled body of law holding that where intervening criminal acts are not reasonably foreseeable, they sever "any causal connection between the acts of [defendants] and the plaintiff's injuries." *Camp v. Loughran*, 285 A.D.2d 483, 484 (2d Dept 2001) (granting defendant hotel summary judgment where plaintiff was sexually assaulted in room); *accord*, *Ingrassia v. Lividikos*, 54 A.D.3d 721, 724 (2d Dept 2009) ("An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant")

(collecting cases); see also *Mintz v. State*, 47 A.D.2d 570, 571 (3d Dept 1975) (terrible and unforeseen weather conditions were the proximate cause of the students' deaths, not any negligence on the part of the university).

Plaintiffs argue, in effect, that little more than Mr. Ray and the Plaintiffs' mere presence at the Chen Condo Unit, should have led Gumley-Haft to anticipate that Ray was regularly sexually assaulting and abusing them. That is, indeed, an extraordinary set of circumstances and an intervening, superseding cause. For numerous reasons set forth above and in the underlying motion, Plaintiffs' negligence claim must be dismissed.

## III. PLAINTIFFS' NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM IS ALSO MERITLESS

Plaintiffs' opposition to the instant motion next claims that Gumley-Haft owed a special duty to Plaintiffs and caused them to suffer traumatic events resulting in them fearing for their safety.

Plaintiffs' argument clearly misunderstands the nature of the duty that is required to be pled to support a negligent infliction of emotional distress claim ("NIED claim") based on a "special duty" theory.  As argued above, without any legal or factual support, Plaintiffs have erroneously concluded that a "special duty" existed between Plaintiffs and Gumley-Haft.  Again, as with the identical negligence claim, Plaintiffs conclude without any supporting facts that Gumley-Haft had direct and/or constructive notice of the harms that Plaintiffs were subjected to. As a result, Gumley-Haft allegedly owed a duty to take steps to mitigate this harm and stop the ongoing criminal activity on the Premises.

However, in making this argument, Plaintiffs misapprehend Gumley-Haft's actual duty and ignore the facts argued extensively above and within Gumley-Haft's initial moving papers – none of the facts pled by Plaintiffs even remotely purport to reflect any evidence that Gumley-Haft knew or had any reason to know that Lawrence Ray was engaging in sex trafficking and/or forced labor.

In fact, an NIED claim "requires proof of a duty owed by the defendant to the plaintiff that is far more specific than the more generalized duty to avoid negligently injuring another." *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005).

For example, in *Mortise v. United States*, 102 F.3d 693 (2d Cir. 1996), plaintiffs were assaulted by the National Guard in a training exercise gone wrong. *Id*. at 694-95. Plaintiffs brought suit, alleging an NIED claim. *Id*. at 696. The Court held that plaintiffs stated no claim under the direct duty theory, because while the Guardsmen "may have had a generalized duty to prevent unreasonable risks of harm to passers-by, this duty was not specific to the [plaintiffs]." *Id*. Similarly, plaintiffs here have not asserted a viable NIED claim herein because Gumley-Haft's duties as a property manager are not specifically owed just to Plaintiffs but to others on its premises as well. *See*, *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, 2022 U.S. Dist. LEXIS 169816, at *88 (E.D.N.Y. Sept. 20, 2022) (duty to consumers to prevent dangerous design and manufacturing defects not a special one owed specifically to plaintiff).

Additionally, Plaintiffs cannot plausibly dispute the fact that this Court and other courts within this circuit regularly dismiss NIED claims where plaintiff "seeks damages for the same circumstances and injuries, physical and emotional, that [the other] tort claims seek." *Boateng*, 2022 U.S. Dist. LEXIS 169816, at * 89; *accord*, *Higgins v. 120 Riverside Blvd. at Trump Place Condo.*, 2022 U.S. Dist. LEXIS 157466, at *99-101 (S.D.N.Y. Aug. 31, 2022) (Liman, J.) (dismissing NIED claim as duplicative of negligence claim because "the only allegations that could support a [NIED] claim in light of the connection between the limited duty owed and the allegations made are duplicative of the conduct underlying the negligence claim").

In their Complaint, Plaintiffs admit that the conduct underlying their NIED claim is identical to the conduct giving rise to their negligence claim. Dkt. 1 at ¶¶ 189-190. Their allegations all focus on Gumley-Haft's purported duty to protect them from Ray, and whether it breached that

duty by failing to take steps to protect them from actions behind closed doors within the confines of the Chen Condo Unit.  There are no allegations of distinct injuries for which redress is available only through an NIED claim.  Accordingly, Plaintiffs' NIED must be dismissed.

## IV. PLAINTIFFS HAVE NOT AND CANNOT PLEAD A VIABLE TVPA CLAIM

To state a claim under the Trafficking Victims Protection Act ("TVPA"), the Plaintiffs must allege facts showing that Gumley-Haft participated in a venture that violated the statute, that it knew or should have known of such violation, and that it knowingly benefited from its participation; *See Doe v. Red Roof Inns, Inc.*, 21 F. 4th 714, 719 (11th Cir. 2021). Plaintiffs' principal opposition to Gumley-Haft's substantive challenge to their TVPA claim is that Gumley-Haft allegedly knew or should have known of "Ray's use of the building and the condo for trafficking of Plaintiffs." Dkt. 49 at ¶ 24. This assertion—which fails to mention any specific act constituting actual trafficking—effectively concedes that they have not identified any specific "exact evil" that Gumley-Haft should have been aware of at the time they allegedly resided in Chen's Condo Unit at the Waterford or that a "TVPA venture" of any sort was occurring at that time, let alone that Gumley-Haft knew it was occurring or derived benefit from its occurrence. These deficiencies are fatal to Plaintiffs' TVPA claim, as are the additional deficiencies discussed more fully below.

### A.  *Plaintiffs Cannot Demonstrate Gumley-Haft Knowingly Benefited*

Plaintiffs speciously claim that Gumley-Haft "knowingly benefited" (1) as a management company through its management services, 2) through cash tips to its employees by Ray and 3) through improvements to the building.

First, Gumley-Haft is not the owner of the Waterford or Chen's Condo Unit, so it is unclear how Gumley-Haft financially benefits from purported improvements to the building.  Plaintiffs include a very roundabout, nonsensical, confusing and circular argument in an effort to explain

how Gumley-Haft knowingly benefitted through unspecified "improvements" to the building. However, Plaintiffs utterly fail to provide any real explanation of how Gumley-Haft financially benefits from these supposed "improvements". Dkt. 49 at 22-23.

Similarly, Gumley-Haft cannot be said to have knowingly financially benefitted "as a management company through its management services" as a result of TVPA violations. Gumley-Haft was already the management company for the Waterford before Plaintiffs arrived there and continued to act in that capacity while the Plaintiffs were there along with after they left. As such, there are no allegations suggesting that Gumley-Haft's status and responsibility as property manager changed because of purported TVPA violations. Moreover, as argued above repeatedly, there are no allegations in the Complaint that establish that Gumley-Haft had any actual or constructive notice of any actions that could be deemed violations of the TVPA.

Lastly and most peculiarly, Plaintiffs argue that Gumley-Haft benefitted from the receipt of cash tips to its employees from Ray and cites ¶67 of the Complaint as support for this claim. Dkt. 49 at 22. However, ¶67 of the Complaint does not actually allege that Lawrence Ray provided cash tips to Gumley-Haft. Rather, it alleges that "[o]n numerous occasions, the Plaintiffs witnessed Lawrence Ray hand wads of cash to the Defendant, Lee Chen." Dkt. 1 at ¶67. Even assuming *arguendo* that receiving tips from Lawrence Ray establishes that Gumley Haft, LLC knowingly received a financial benefit from Ray, which Gumley-Haft respectfully submits it does not, the point is moot because the Complaint does not include a single allegation reflecting that Gumley-Haft received cash tips from Lawrence Ray. To the best of Gumley-Haft's understanding, cash payments to Mr. Chen or the doormen do not constitute any benefit to Gumley-Haft.

Ironically, the case Plaintiffs rely on, *M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959 (S.D. Ohio 2019), actually underscores Plaintiffs' pleading deficiencies. The Court in *M.A.* was dealing with a situation where a hotel rented rooms to the trafficker during the

trafficking venture. Hotel staff were in a position to observe "an extraordinary number of used condoms" and other sex paraphernalia in the rooms; the hotel received cash payments for rooms; staff saw evidence of M.A.'s physical deterioration and bruising and heard her "desperate pleas and screams for help." *Id*. at 962.  The Court found that these events as pled in the Complaint alerted or should have alerted the hotel to sex trafficking on the premises and found that the flow of room rental revenue constituted a financial benefit "from a relationship with the trafficker".  As a result, the Court denied dismissal of the TVPA claim. *Id*. at 965.

The facts of *M.A v. Wyndham* are infinitely stronger than the circumstances alleged in this matter and plainly demonstrate the absence of allegations sufficient to show that Gumley-Haft knowingly benefited from a trafficking venture.

### B.  Plaintiffs Cannot Allege Facts Showing that Gumley-Haft Participated in a TVPA Venture

Gumley-Haft has never argued and is not arguing now, that "participation" under the TVPA requires actual joinder in the labor or sex trafficking venture or is akin to participating in a "conspiracy." Rather, Gumley-Haft posits that participation must be shown by a tacit agreement that is sufficient to link the derived benefit to the trafficking venture; *See*, *Doe v. Red Roof Inns*, 21 F. 4th at 724-25 (concluding that "the phrase `participation in a venture' requires that the [plaintiff] allege that the [defendant] took part in a common undertaking or enterprise involving risk and potential profit").

Plaintiffs fail to adequately allege this element of their TVPA claim. They again claim that Gumley-Haft was in its own profitable venture of managing access to a residential building.  This is simply not demonstrative of Gumley-Haft knowingly profiting from a TVPA violation.  Further, the act of Gumley-Haft performing its managing agent duties is also not evidence that it participated in a TVPA venture.  Plaintiffs' argument that Gumley-Haft had the authority to remove Ray yet continued to allow him access to the building; thereby, creating a tacit agreement

to allow Ray access to [p]laintiffs simply defies logic. Dkt. 49 at 22-23. However, Ray's "access to the building and condominium" is not sufficient to demonstrate knowledge of, or tacit agreement to, acts of alleged trafficking, or a trafficking venture.  An "allegation of but-for causation does not establish that [Gumley-Haft] tacitly agreed to the [labor or] sex trafficking of [p]laintiff[s]." See *J.B. v. G6 Hosp., LLC*, 2020 U.S. Dist. LEXIS 151213, at *26-27 (N.D. Ca. Aug. 20, 2020).

For this reason, Plaintiffs' TVPA claim must be dismissed.

**C.    *Plaintiffs Cannot Allege that Gumley-Haft had Knowledge of Their Alleged Trafficking by Ray***

Plaintiffs continue to argue that Gumley-Haft ignored "repeated violations of regulations", allowed Ray and Plaintiffs unfettered access to the condominium and claim that Gumley-Haft was motivated by Ray's purported excessive tips, notably raised for the first time within their opposition. As argued several times above and within Gumley-Haft's moving papers, all of these purported "facts" fall woefully short of establishing a cause of action that Gumley-Haft had knowledge of any alleged trafficking by Ray.

Despite Plaintiffs' insistence to the contrary, they also are required to allege facts upon which a reasonable inference can be drawn that Gumley-Haft knew or should have known of specific trafficking acts. *See, Doe v. Red Roof Inns*, 21 F. 4th at 726; E.S., 510 F. Supp. 3d at 428-29; *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). General allegations of wrongdoing do not come close to satisfying "the knowledge element as to a particular sex trafficking venture." *S.J.*, 473 F. Supp. 3d at 154.

Indeed, Plaintiffs have levied conclusory allegations about unidentified, undated, unspecified "complaints" that were purportedly ignored by Gumley-Haft.  They have made misleading arguments to the Court about allegations that Gumley-Haft was motivated by Ray's excessive tips to turn a blind eye to these unspecified, undated and unidentified complaints when no such allegations exist in the Complaint. Moreover, Plaintiffs have set forth no specific

20

allegations within the Complaint identifying any specific activities that should have placed Gumley-Haft on actual or constructive notice that sex trafficking was going on within Chen's Condo Unit.  See Dkt 1, at ¶¶ 67, 80, 82, 183, 186, 191.

Moreover, the Plaintiffs unreasonably complain that Gumley-Haft should have blocked their own access to the building and Chen's Condo Unit.  Yet, there are no allegations in the Complaint that the Plaintiffs ever said anything to anyone with Gumley-Haft to give it any reason to believe that they were being sex trafficked or that any wrongdoing was going on in Chen's Condo Unit.  These conclusory and simply misrepresented allegations are wholly inadequate to support a claim that Gumley-Haft knew or should have known about Ray's specific labor or sex trafficking. Further, there is simply no evidence to establish that Gumley-Haft is properly subject to a TVPA claim.

Two cases vividly illustrate the inadequacy of Plaintiffs' pleading here.  In *Lawson v. Rubin*, 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Apr. 29, 2018), plaintiffs claimed that the defendant property owner "should have known about alleged trafficking based on its duty to monitor the premises." *Id*. at 38-39.  Plaintiffs alleged that when they resided on the property, on one occasion the police visited, and on another an ambulance was dispatched to the residence. *Id*. at 38.  Plaintiffs claimed that the defendant failed to inquire following these separate incidents. *Id*. at 39.  The Court, in dismissing the TVPA claim, reasoned that even if defendant had a duty to investigate, "there would not have been any reason for it to infer illegal conduct," and "any investigation by [defendant] would not have led to any more information about the alleged human trafficking enterprise." Id. at 39-40.  This same reasoning applies to the facts pleaded herein.

On the other hand, in *MA*., 425 F. Supp. 3d at 962 (S.D. Ohio 2019), as noted above, there was far more explicit evidence of sex trafficking known to the hotel owners, including unusual numbers of condoms and sex aids in the rooms and the trash, significant indicators of sexual

activity in the rooms, and the ability of hotel staff to observe plaintiff's state of "physical deterioration" and hear her "desperate pleas and screams for help," all consistent with her status as a sex trafficking victim. *Id.* Even these detailed allegations were insufficient to establish a viable claim that defendants actually knew of trafficking, but they were sufficient to allege defendants should have known of such trafficking. *Id*. at 968-69.

The parallels between *Lawson* and the instant case, and its dissimilarities when compared to the facts alleged in *M.A.*, thoroughly highlight the deficiencies in Plaintiffs' TVPA claim. These deficiencies are particularly glaring given that Plaintiffs themselves are the ones that "know or should know" whether they were trafficked, when that occurred, who they told, and where and how others allegedly witnessed relevant events while they were residing in Chen's Condo Unit. The complete dearth of specific allegations in the Complaint reflecting Gumley-Haft's purported actual or constructive notice of facts that might lead to a belief that they were being sex trafficked is revealing and dispositive. Based on this and Gumley-Haft's other arguments, Plaintiffs' TVPA claim should be dismissed.

## V. LEAVE TO AMEND SHOULD BE DENIED

In their memorandum in opposition to the instant motion, Plaintiffs request leave to amend their Complaint but provide the Court with neither a proposed amended Complaint, nor declarations or other evidentiary material setting forth facts they would propose to add to their deficient pleading. Dkt. 49 at 25. This Court, of course, "has discretion whether or not to grant leave to amend." See *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir 1993) (quotation omitted). However, leave to amend will generally be denied when, among other reasons, a party seeking to amend a pleading fails to make the application in a procedurally proper manner, *Corsini v. Nast*, 613 F. App'x 1, 4 (2d Cir. 2015), or when the proposed amendment is futile. *See, e.g., Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citation omitted).

Here, Plaintiff's request to amend the Complaint should be denied because the amendment request is palpably and procedurally deficient. *See Corsini*, 613 F. App'x at 4 ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss") (quotation omitted). Courts will regularly deny a request to amend where, as here, a plaintiff fails to proffer, with the request, a proposed amended pleading, and fails to provide specificity as to the reasons the proposed amendment will address deficiencies in the initial pleading. Consistent with this authority, Plaintiffs' "failure to submit a proposed amended complaint provides justifiable grounds upon which the Court may deny [their amendment] request." *Klein v. Forster & Garbus, LLP*, 2021 U.S. Dist. LEXIS 120249, at \*12 (E.D.N.Y. June 28, 2021); *Zito v. Leasecomm Corp.*, 2004 U.S. Dist. LEXIS 19778, at \*79-80 (S.D.N.Y. Sept. 30, 2004) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought") (quotation omitted); *accord*, *Spencer v. Omega Labs.*, 2021 U.S. Dist. LEXIS 106750, at \*1-2 (E.D.N.Y. June 7, 2021) (denying motion to amend because plaintiff failed to submit a proposed amended complaint).

In any event, amendment in this situation also would be futile. *See Klein*, 2021 U.S. Dist. LEXIS 120249, at \*11-12 ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies in the complaint or to state a claim on which relief can be granted"). For the many reasons discussed at length above, Plaintiffs cannot credibly plead facts sufficient to state a timely or viable claim against Gumley-Haft, and there is no showing why or how an amendment would cure the multiple deficiencies identified on this motion.

Accordingly, Plaintiffs' request for leave to amend their Complaint should be denied.

## **CONCLUSION**

For these reasons, and those set forth in Gumley-Haft's underlying Memorandum in support of the instant motion, Gumley-Haft's Motion to Dismiss should be granted in all respects, and Plaintiffs' Complaint should be dismissed.

Dated: Tarrytown, New York
    May 29, 2024

Yours, etc.

RESNICK & LOUIS, PC

_____
By: Scott Goldstein (SG8333)
*Attorneys for Defendant, Gumley-Haft LLC*
520 White Plains Road, Suite 500
Tarrytown, New York 10591
(914) 435-7229

24