UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DANIEL B. LEVIN, SANTOS J. ROSARIO, and
FELICIA ROSARIO,

                              Plaintiffs,                Civil Action No.: 23-cv-10236

-vs-

SARAH LAWRENCE COLLEGE, LEE CHEN,
GUMLEY-HAFT LLC, and SCOTT MULLER,

                              Defendants.
_____

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SARAH LAWRENCE COLLEGE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

HODGSON RUSS LLP
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

*Attorneys for defendant*
*Sarah Lawrence College*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY OF THE PLEADED FACTS ............................................................... 1

   A.   Plaintiffs' Claims that SLC Should Have Known Ray was on Campus ............................ 2

   B.   Plaintiffs' Claims that Ray Harmed them on SLC's Campus ............................................ 5

   C.   Plaintiffs' Continued Interactions with Ray ...................................................................... 6

ARGUMENT ................................................................................................... 7

   I.   PLAINTIFFS' STATE LAW CLAIMS ARE TIME-BARRED ......................................... 9

   II.   PLAINTIFFS' TVPRA CLAIM IS SIMILARLY UNTIMELY ...................................... 13

   III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR COMMON LAW NEGLIGENCE ............ 14

      A.   The "School-Controlled Activity" Exception does not Apply ..................................... 15

      B.   Plaintiffs State no Claim against Sarah Lawrence as a Landowner .......................... 18

   IV.   PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM IS MERITLESS ...... 21

   V.   PLAINTIFFS HAVE FAILED TO PLEAD A VIABLE TVPRA CLAIM ......................... 23

      A.   The College did not Knowingly Financially Benefit from a TVPRA Venture ............ 23

      B.   The College did not Participate in a Venture under the TVPRA ................................ 24

      C.   The College did not have Knowledge of Sex or Labor Trafficking ........................... 25

CONCLUSION ............................................................................................... 26

<u>T</u>ABLE OF <u>A</u>UTHORITIES

## <u>Cases</u>

*31FO, LLC v. Inc. Vill. Of Lloyd Harbor*,
 2023 U.S. Dist. LEXIS 175797 (E.D.N.Y. Sept. 29, 2023) ...................................................... 6

*Alexander v. Westbury Union Free Sch. Dist.*,
 829 F. Supp. 2d 89 (E.D.N.Y. 2011) ........................................................................................ 22

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................7, 8, 11

*Ayeni v. County of Nassau*,
 18 A.D.3d 409 (2d Dep't 2005) ................................................................................................ 18

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .............................................................................................................. 7, 8

*Beter v. Baughman*,
 2024 U.S. Dist. LEXIS 45632 (S.D.N.Y. Mar. 13, 2024) ....................................................... 22

*Brandy B. v. Eden Cent. Sch. Dist.*,
 15 N.Y.3d 297 (2010) ............................................................................................................... 19

*Brass v. American Film Technologies, Inc.*,
 987 F.2d 142 (2d Cir. 1993) ....................................................................................................... 8

*Burroughs v. Mitchell*,
 325 F. Supp. 3d 249 (N.D.N.Y. 2018) ...................................................................................... 22

*Chambers v. Time Warner, Inc.*,
 282 F.3d 147 (2d Cir. 2002) ....................................................................................................... 8

*Coke NG v. Sedgwick Claims Mgmt. Servs. Inc.*,
 2024 U.S. Dist. LEXIS 210168 (S.D.N.Y. Nov. 19, 2024) ....................................................... 6

*Cort v. Marshall's Dep't Store*,
 2015 U.S. Dist. LEXIS 172611 (E.D.N.Y. Dec. 29, 2015) ...................................................... 20

*Curtis v. Gates Cmty. Chapel of Rochester, Inc.*,
 2023 U.S. Dist. LEXIS 14399 (W.D.N.Y. Jan. 27, 2023) ........................................................ 23

*D'Amico v. Christie*,
 71 N.Y.2d 76 (1987) ............................................................................................... 19

*Doe v. Abulaziz Bin Fahd Alsaud*,
 12 F. Supp. 3d 674 (S.D.N.Y. 2014) ....................................................................... 19

*Doe v. Union Coll.*,
 2020 U.S. Dist. LEXIS 38136 (N.D.N.Y. Mar. 5, 2020) ......................................... 22

*Doe v. Wilhelmina Models, Inc.*,
 229 A.D.3d 128 (1st Dep't 2024) ............................................................................ 19

*Druger v. Syracuse Univ.*,
 207 A.D.3d 1153 (4th Dep't 2022) .......................................................................... 13

*Druschke v. Banana Republic, Inc.*,
 359 F. Supp. 2d 308 (S.D.N.Y. 2005) ..................................................................... 22

*Eckhart v. Fox News Network, LLC*,
 2021 U.S. Dist. LEXIS 171219 (S.D.N.Y. Sept. 9, 2021) ....................................... 25

*Eiseman v. State*,
 70 N.Y.2d 175 (1987) ....................................................................................... 15, 17

*Ellis v. Mildred Elly Sch.*,
 245 AD2d 994 (3d Dep't 1997) ............................................................................... 18

*Faiaz v. Colgate Univ.*,
 64 F. Supp. 3d 336 (N.D.N.Y. 2014) ....................................................................... 17

*Fisher v. JPMorgan Chase Bank, N.A.*,
 740 F. App'x 745 (2d Cir. 2018) ............................................................................... 9

*Francis v. Kings Park Manor, Inc.*,
 992 F.3d 67 (2d Cir. 2021) ...................................................................................... 21

*G.G. v. Salesforce.com, Inc.*
 76 F.4th 544 (7th Cir. 2023) .................................................................................... 23

*Geywits v. Charlotte Val. Cent. Sch. Dist.*,
 98 A.D.3d 804 (3d Dep't 2012) ............................................................................... 19

*Ghartey v. St. John's Queens Hosp.*,
    869 F.2d 160 (2d Cir. 1989) ........................................................................................ 9

*Glantz v. James River Group Holdings, Ltd.*,
    2025 U.S. Dist. LEXIS 11982 (S.D.N.Y. Jan. 23, 2025)........................................... 8

*Gray v. Wesco Aircraft Holdings, Inc.*,
    454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd* 847 F. App'x 35 (2d Cir. 2021) ........................... 8

*Hamilton v. Beretta U.S.A. Corp.*,
    96 N.Y.2d 222 (2001) ............................................................................................... 18

*Harper v. Ercole*,
    648 F.3d 132 (2d Cir. 2011)...................................................................................... 14

*Harrington v. Crouse Hosp.*,
    2024 U.S. Dist. LEXIS 185673 (N.D.N.Y. Oct. 10, 2024) ....................................... 10

*Holmberg v. Ambrecht*,
    327 U.S. 392 (1946) .................................................................................................. 13

*Hores v. Sargent*,
    230 A.D.2d 712 (2d Dep't 1996)............................................................................... 15

*J.S.M. v. City of Albany Dep't of Gen. Svcs.*,
    83 Misc. 3d 1082 (Sup. Ct. Albany Cty. 2024) ........................................................ 10

*Johnson v. NYU Langone Health*,
    2023 U.S. Dist. LEXIS 176652 (S.D.N.Y. Sept. 30, 2023)................................. 10, 13

*Lafrantz v. St. Mary's Roman Cath. Church*,
    2024 U.S. Dist. LEXIS 10154 (E.D.N.Y. Jan. 19, 2024) .......................................... 19

*Leib-Podry v. Tobias*,
    2024 U.S. Dist. LEXIS 63266 (S.D.N.Y. Feb. 13, 2024)........................................... 10

*Lloyd v. Alpha Phi Alpha Fraternity*,
    1999 U.S. Dist. LEXIS 906 (N.D.N.Y. Jan. 26, 1999)........................................ 15, 17

*Luck v. Westchester Med. Ctr.*,
    2019 U.S. Dist. LEXIS 16625 (S.D.N.Y. Feb. 1, 2019)........................................ 9, 12

*Lunia v. Katherine Gibbs School N.Y., Inc.*,
 37 A.D.3d 555 (2d Dep't 2007) ............................................................................. 18

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
 425 F. Supp. 3d 959 (S.D. Ohio 2019) ............................................................ 23, 24

*Mateo v. Westchester Cty.*,
 2020 U.S. Dist. LEXIS 179366 (S.D.N.Y. Sept. 29, 2020) ...................................... 9

*Maysonet v. KFC, Nat'l Management Co.*,
 906 F.2d 929 (2d Cir. 1990) ................................................................................... 18

*Menominee Indian Tribe of Wisc. v. United States*,
 577 U.S. 250 (2016) ............................................................................................... 14

*Mortise v. United States*,
 102 F.3d 693 (2d Cir. 1996) ................................................................................... 22

*Nungesser v. Columbia Univ.*,
 169 F. Supp. 3d 353 (S.D.N.Y. 2016) .................................................................. 7, 8

*Pasquaretto v. Long Is. Univ.*,
 106 A.D.3d 794 (2d Dep't 2013) ...................................................................... 15, 17

*Poindexter v. EMI Record Group, Inc.*,
 2012 U.S. Dist. LEXIS 42174 (S.D.N.Y. Mar. 27, 2012) .................................. 9, 12

*Potrzeba v. Sherburne-Earlville High Sch.*,
 2023 U.S. Dist. LEXIS 227159 (N.D.N.Y. Dec. 21, 2023) .................................... 21

*Puentes v. Union Coll.*,
 2024 U.S. Dist. LEXIS 55766 (N.D.N.Y. Mar. 28, 2024) ...................................... 16

*Ratha v. Phatthana Seafood Co.*,
 35 F.4th 1159 (9th Cir.), *cert. denied* 143 S. Ct. 491 (2022) ................................ 24

*Romero v. City of New York*,
 839 F. Supp. 2d 588 (E.D.N.Y. 2012) .................................................................... 22

*Rothbard v. Colgate Univ.*,
 235 A.D.2d 675 (3d Dep't 1997) ............................................................................ 15

*Rothbard v. Colgate Univ.*,
    235 A.D.2d 675 (3d Dep't 1997) ........................................................... 17

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ..................................................................... 9

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) .............................................. 23, 25

*Smalls v. Collins*,
    10 F.4th 117 (2d Cir. 2021) ................................................................. 14

*Staehr v. Hartford Fin. Servs. Group*,
    547 F.3d 406 (2d Cir. 2008) ................................................................... 9

*Taft v. Connell*,
    285 A.D.2d 992 (4th Dep't 2001) ......................................................... 18

*Talbot v. N.Y. Inst. of Tech.*,
    225 A.D.2d 611 (2d Dep't 1996) .................................................... 15, 17

**<u>Statutes</u>**

18 U.S.C. § 1595 ......................................................................................... 13

N.Y. Civ. Prac. L. & R. § 214(5) ................................................................. 9

N.Y. Civ. Prac. L. & R. § 214-g .......................................................... *passim*

N.Y. Penal L. § 130 ............................................................................. *passim*

N.Y. Penal L. § 130.52 ................................................................................ 11

N.Y. Penal L. § 130.65 ................................................................................ 11

## PRELIMINARY STATEMENT

In a lengthy Opinion dated September 3, 2024 (the "2024 Dismissal Order"), this Court dismissed plaintiffs' Complaint against Sarah Lawrence College ("Sarah Lawrence," "SLC" or "the College"), on several distinct grounds. Dkt. 62. Among them:

- Plaintiffs failed to allege injury arising from a predicate sexual offense, as delineated in Penal Law Article 130, that also was causally linked to specific negligent or otherwise actionable conduct on the part of the College; this failure rendered plaintiffs incapable of availing themselves of the revival provisions of New York's Adult Survivors Act.  *See* Dkt. 62 at 20-28.

- Plaintiffs failed to allege timely state law claims for any negligence-based theory of recovery as against SLC.  *Id.*

- Plaintiffs failed to assert timely claims for relief under the Trafficking Victims Protection Reauthorization Act ("TVPRA").  *Id.* at 29-33.

- Plaintiffs failed to establish a valid basis to equitably toll the TVPRA limitations period.  *Id.* at 33-38.

- Plaintiffs failed to allege any viable negligence-based claim against the College.  *Id.* at 38-43.

- Plaintiffs failed to allege a viable TVPRA claim against SLC.  *Id.* at 45-47.

The Court also granted plaintiffs leave to file an Amended Complaint, which they filed on December 16, 2024. Dkt. 72. That Amended Complaint does not cure the deficiencies above or plead a viable claim for relief as against the College. The Amended Complaint as against Sarah Lawrence College therefore should be dismissed.

## SUMMARY OF THE PLEADED FACTS

The Amended Complaint alleges that while plaintiffs Daniel Levin and Santos Rosario were sophomores at Sarah Lawrence, in the Fall of 2010, they lived with several classmates,

1

including a student named T.R.,[1] in Slonim Woods 9, a "townhouse-style dormitory." Dkt. 72 at ¶¶ 14-16. They claim that at the time, they learned that T.R.'s father, Lawrence Ray, had been convicted of kidnapping T.R. and was "behind bars" as a result. *Id.* at ¶¶ 17-18. They further claim that at some later point during the Fall 2010 semester, they learned Ray had been released from prison, and he "moved into" the townhouse at SLC where T.R., Levin, Santos Rosario, and five other students were living. *Id.* at ¶¶ 19-20. Plaintiffs claim that once Ray "moved into the dormitory, he immediately integrated himself into the lives of the young people who lived" there, including Levin and Santos Rosario. *Id.* at ¶ 35.

A.      **Plaintiffs' Claims that SLC Should Have Known Ray was on Campus**

Plaintiffs do not allege they ever notified anyone at the College of Ray's alleged presence during the 2010-2011 academic year. Yet, they nonetheless claim SLC "should have known that criminal Lawrence Ray was living with students under its care and protection and on school property." Dkt. 72 at ¶ 21. In support of this conclusory allegation of notice, plaintiffs allege several purported bases; none plausibly allege such knowledge on the College's part.

First, plaintiffs allege that Slonim Woods 9 is located on a "busy, main road of the campus," Kimball Avenue, which is "regularly traveled by students and staff." *Id.* at ¶ 23. Signage on campus was alleged to have "indicated to students that Kimball Avenue was under '24 Hour Video Recording.'" *Id.* at ¶ 24. The Amended Complaint further asserts that "there were several campus buildings" and "parking lots for staff and students" located "on/around Kimball Avenue." *Id.* at ¶ 25. However, plaintiffs do not plead that any College employee knew of Ray's presence because

---

[1] Plaintiffs identified this student, and several others, by name in their amended pleading, although she is a non-party whose student records are confidential and protected under FERPA. The College will request plaintiffs redact from the publicly available docket the names and all other identifiers with respect to all non-party students.

of the location of Slonim Woods 9 or its proximity to Kimball Avenue, nor do they allege facts plausibly suggesting the on-campus presence of parents or other adults in that age range was, or should have been, of particular note, or that such presence reasonably should have led the College to suspect that a parent was harming students at their campus residences.

Second, plaintiffs claim Ray "made minimal effort to conceal his existence" at SLC, "freely entered and exited the grounds," drove to the grocery store while "passing College cameras, security personnel, and staff," "openly searched" for T.R.'s missing cat, and set off a smoke alarm while cooking in the Slonim Woods townhouse. Dkt. 72 at ¶¶ 36-46. These allegations also do not constitute a basis to plausibly infer the College had notice of an imminent danger to students or others.  No specific "security personnel" or SLC staff member is identified as having taken notice of Ray, nor do plaintiffs allege how a person driving on Kimball Avenue, a public thoroughfare accessible to all, could constitute notice that Ray was residing on campus, let alone harming them.

This Court in its 2024 Dismissal Order agreed, summarizing its conclusion thusly:

> Plaintiffs do not plead that the fact of Ray's presence on campus should have alerted SLC that he presented a foreseeable danger.  The behaviors SLC is alleged to have been aware of are innocuous: searching for a cat…cooking in a dorm room…and driving to the grocery store…None of those activities would have made it foreseeable to SLC that Ray would commit criminal or dangerous acts in the future.

Dkt. 62 at 42-43.

Third, plaintiffs assert the College "advertised and described" its dormitories as a "highly supervised and regulated school activity and function," with "multiple layers of supervisory staff," and "regular" "inspections" and "meetings."  Dkt. 72 at ¶¶ 27-28, 32-34.  While the Student Handbook notes SLC had a trained team of Residence Life staff members, who were committed to providing a secure environment for the community (dkt. 72-1 (ex. A) at 15; dkt. 72-2 (ex. B) at

2), plaintiffs do not allege facts demonstrating that any dorm supervisor saw Ray, or that if a dorm supervisor saw Ray, a parent, they would know or be inclined to suspect that Ray was engaging in harmful conduct toward students. Similarly, while the Handbook references biannual room inspections and periodic community meetings (dkt. 72-1 (ex. A) at 19; dkt. 72-3 (ex. C) at 3), there is no assertion that the inspections (typically conducted during break periods) or community meetings alerted anyone to Ray's presence, or would tip off his allegedly criminal conduct.

Fourth, plaintiffs reference the College's guest policy, which required all guests at Sarah Lawrence to be registered, and limited overnight guests to four consecutive days, and to no more than two such stays in any 30-day period. Dkt. 72 at ¶¶ 30-31. Plaintiffs imply that Ray's unregistered presence on campus violated the visitor policy, but they blithely ignore the fact that *they* were responsible for ensuring compliance with that policy, and that *they* neglected to register Ray as a campus visitor, at any time. *See* Dkt. 72-1 (Ex. A) at 20 ("For everyone's safety, *students* are required to register and obtain passes for their guests[.]") (emphasis supplied). Also noticeably absent from their Amended Complaint is any assertion that the "guest registration" process alerted anyone at SLC—excepting plaintiffs and their housemates—to Ray's presence on campus.

Fifth, plaintiffs rely on an email circulated by former SLC student C.D. in September 2011—several months after Ray was living in Manhattan. Plaintiffs claim this email confirms two SLC professors—Nancy Baker and Michael Davis—were aware that "Lawrence Ray was residing in the Slonim Woods dorm and having an inappropriate sexual relationship with a fellow student named [I.P.]." Dkt. 72 at ¶ 49; *see generally id.* at ¶¶ 49-55, 158-59; Dkt. 72-4 (Ex. D). But the email does not say C.D. told Baker or Davis that Ray lived on campus, that his alleged relations with I.P. occurred on campus, or that the relations with I.P. were non-consensual or criminal. *See* Dkt. 72-4 (Ex. D).  Likewise, plaintiffs attempt to rely on the testimony at Ray's criminal trial to

4

support their notice allegation, but the testimony they cite merely indicates that C.D. told Baker

that Ray was "spending time" with I.P. "in her dorm room" and that she was "worried" Ray was

"hurting" I.P. Dkt. 72-5 (Ex. E) at 4-6. The testimony, however, does not indicate how Ray was

allegedly hurting I.P. or that the conduct was criminal.

Finally, plaintiffs' conclusory references to "concerns" related to "students' health and

well-being as a result of Ray's abusive behavior," made to unspecified SLC administrators by

"students, community members and parents, including but not limited to [C.D.'s] mother," (dkt.

72 at ¶ 560, are equally unavailing. This Court explicitly rejected this identical allegation:

> Plaintiffs do not state what the concerns were, how Ray's behavior
> while on campus was abusive, or how the students, community
> members and parents' contact with SLC might have made Ray's
> later conduct more foreseeable. "Without notice of prior criminal
> activity, the owner's duty reasonably to protect those using the
> premises from such activity never arises."

 Dkt. 62 at 43 (citations omitted).

## B.    Plaintiffs' Claims that Ray Harmed them on SLC's Campus

Plaintiffs also claim "[d]uring the time Lawrence Ray resided in the Slonim Woods

dormitory . . . he committed acts of sexual violence against several individuals, including

[p]laintiffs" Levin, Santos Rosario, and Felicia Rosario. Dkt. 72 at ¶ 48. Plaintiffs allege Levin

and Santos Rosario were subjected to Forcible Touching and Sexual Abuse in the First Degree by

Ray while they were on the SLC campus. *Id.* at ¶ 59. Yet, the sole act that allegedly constituted

such "crimes" was Ray's purported insistence that Levin and Santos Rosario (both men) "remove

their shirts and perform excessive and strenuous tasks, such as hundreds of push-ups, in front of

other individuals in the Slonim Woods dormitory," with the "intention to abuse and degrade" those

two plaintiffs. *Id.* at ¶¶ 59-61. No actual touching, let alone forcible touching, is alleged, nor is

there any assertion of sexual contact between Ray (or anyone else) and either of these two men.

With respect to plaintiff Felicia Rosario—who was never an SLC student—plaintiffs allege that when Ray "was residing in the Slonim Woods dormitory," *i.e.*, sometime between Fall 2010 and Spring 2011 (*see, e.g.*, dkt. 72 at ¶ 156), she was subjected to Forcible Touching and Sexual Abuse in the First Degree. *Id.* at ¶ 62. Plaintiffs allege that in the presence of unidentified persons, Ray purportedly "grabbed" her breasts without consent, with the intent to "abuse and degrade" her. *Id.* at ¶¶ 62-64. This conclusory allegation fails to clear even the basic threshold of Rule 8 notice pleading, let alone the far more stringent standard to be applied where, as here, plaintiffs must cure the manifold deficiencies identified in the 2024 Dismissal Order. Additionally, this allegation squarely contradicts Ms. Rosario's sworn testimony given at Ray's criminal trial:

> Q:  When did you first meet the defendant?
> A:  September 2011.
>       . . .
> Q:  So let's turn to your first meeting with the defendant. Where did you first meet him?
> A:  At his apartment.
> Q:  And was that in New York City or somewhere else?
> A:  In New York City.

*See* January 31, 2025 Declaration of Thomas D'Antonio, Ex. 1 at 4, 6 (1474, 1486); *see* Ex. 2.[2]

## C.    Plaintiffs' Continued Interactions with Ray

Even after allegedly suffering "a year of sexual abus[e]" on the SLC campus at the hands of Larry Ray, the Amended Complaint alleges that in the summer of 2011 plaintiffs Levin, Santos

---

[2] Consideration of Felicia Rosario's testimony is appropriate on this Rule 12(b)(6) motion because plaintiffs attach portions of that testimony to their Amended Complaint (dkt. 72-8 (Ex. H)) and rely on it *for its truth* in asserting allegations therein (dkt. 72 at ¶¶ 85-88). *See* pgs. 8-9, *infra*. Plaintiffs should not be permitted to "have this Court examine the [] transcript with one eye closed, focusing only on portions [they] believe helpful." *See, e.g.*, *31FO, LLC v. Inc. Vill. Of Lloyd Harbor*, 2023 U.S. Dist. LEXIS 175797, at *2-6 (E.D.N.Y. Sept. 29, 2023); *Coke NG v. Sedgwick Claims Mgmt. Servs. Inc.*, 2024 U.S. Dist. LEXIS 210168 (S.D.N.Y. Nov. 19, 2024) (various documents, including letters and transcripts, which plaintiff attached to the complaint, quoted from, and treated as accurate, could be considered on Rule 12(b)(6) motion).

Rosario, and Felicia Rosario (who was never a SLC student) moved, with Ray, to an apartment in Manhattan. Dkt. 72 at ¶ 65. Plaintiffs do not claim that the College owned or had any connection with that apartment, or that apartment building; indeed, they allege the apartment was owned by Lee Chen and the building was managed by Gumley-Haft LLC. *Id.* at ¶¶ 66-67. There, plaintiffs claim Ray engaged in a litany of abusive and violent acts toward them. *Id.* at ¶¶ 68-113.

In the summer of 2013, plaintiffs allege Ray and the Rosarios (Santos and Felicia) moved to North Carolina, where his "abusive" conduct continued. *Id.* at ¶¶ 114-118. And, eventually, Ray and Felicia Rosario purportedly moved to New Jersey, to a house owned by Scott Muller. *Id.* at ¶ 119. There, Felicia Rosario "was forced to perform painful, hard manual labor . . . for free until the time of Lawrence Ray's arrest in February 2020." *Id.* at ¶¶ 119-121.

In 2020, Ray was arrested. Dkt. 62 at 6; Dkt. 72 at ¶ 123. The jury at his resulting trial found Ray guilty on all charges in 2023, and this Court sentenced Ray to 60 years in prison. Dkt. 62 at 6; Dkt. 72 at ¶ 124. The conduct at issue in the criminal trial centered on physical and sexual abuse, and related acts of misconduct by Ray, occurring in the Manhattan, North Carolina, and New Jersey locations that were neither owned by or within the control of Sarah Lawrence.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must 'nudge' claims 'across the line from conceivable to plausible.'" *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 362 (S.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 570).

Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Glantz v. James River Group Holdings, Ltd.*, 2025 U.S. Dist. LEXIS 11982, at *13 (S.D.N.Y. Jan. 23, 2025) (*quoting Iqbal*, 556 U.S. at 678). And "[l]egal conclusions, unlike facts, are not entitled to an assumption of truth." *Nungesser*, 169 F. Supp. 3d at 362. Thus, complaints offering "'labels and conclusions' or 'naked assertions' without 'further factual enhancement' will not survive a motion to dismiss." *Id.* (quoting *Iqbal*, 556 U.S. at 679). The plausibility requirement "calls for enough fact" to reasonably expect that discovery will reveal evidence supporting the claim. *Glantz*, 2025 U.S. Dist. LEXIS 11982, at *13-14 (*quoting Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at *13 (quotation omitted).

The "Second Circuit has long held that a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, and that a court may consider documents incorporated in a complaint by reference on a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) without converting it to a motion for summary judgment." *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382-83 (S.D.N.Y. 2020), *aff'd* 847 F. App'x 35 (2d Cir. 2021) (citation omitted); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated") (quotation omitted); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (on a Rule 12(b)(6) motion, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, or documents either in plaintiffs' possession or of which plaintiffs

had knowledge and relied on in bringing suit). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group, Inc.*, 2012 U.S. Dist. LEXIS 42174, at *6 (S.D.N.Y. Mar. 27, 2012); *Luck v. Westchester Med. Ctr.*, 2019 U.S. Dist. LEXIS 16625, at *10-12 (S.D.N.Y. Feb. 1, 2019) ("[w]hen confronted with sworn testimony that contradicts allegations in a complaint, courts should accept sworn testimony").

In addition, "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 426 (2d Cir. 2008); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) (same); *see also Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (complaint includes written instruments attached as exhibits); *Mateo v. Westchester Cty.*, 2020 U.S. Dist. LEXIS 179366, at *11 (S.D.N.Y. Sept. 29, 2020) (material attached to complaint part of complaint itself).

## I.    PLAINTIFFS' STATE LAW CLAIMS ARE TIME-BARRED

Plaintiffs' negligence-based claims against the College accrued—at the *latest*—at the end of the 2010-11 academic year (*i.e.*, May 2011), when plaintiffs assert that they moved to the private apartment in Manhattan that was owned by Chen and occupied by Ray.  Dkt. 72 at ¶¶ 65-67. Those claims thus became time-barred more than a decade before plaintiffs commenced this action. *See, e.g.*, N.Y. Civ. Prac. L. & R. § 214(5) (McKinney's 2019 & Supp 2024); *Fisher v. JPMorgan Chase Bank, N.A.*, 740 F. App'x 745, 746 (2d Cir. 2018) (New York law "imposes a three-year limitations period to negligence claims").

Plaintiffs attempt to revive those time-barred claims through the application of the Adult Survivors Act ("ASA"), now codified at CPLR 214-j.  In its detailed analysis, this Court in its 2024 Dismissal Order found the revival statute unavailing in this case, reasoning as follows:

> The ASA revives only those claims that seek relief from an injury caused by conduct that constitutes a predicate sexual offense under Part 130 of the Penal Law….'[T]he appropriate CVA revival test is whether the civil claim *arises from* sexual misconduct criminalized under [Article] 130' [citation omitted]….In sum, Plaintiffs must allege injury from at least one predicate sex offense as the basis of each claim Plaintiffs attempt to revive pursuant to the ASA….Plaintiffs have not done so here.

Dkt. 62 at 20, 21 (emphasis original).[3] In order to avail themselves of the revival provisions of the ASA, plaintiffs must make allegations that they were victims of a violation of Article 130 of the Penal Law.  Dkt 62 at 20-21; *accord*, *Harrington v. Crouse Hosp.*, 2024 U.S. Dist. LEXIS 185673, at *11 (N.D.N.Y. Oct. 10, 2024) (failure to plausibly allege facts identifying "sexual acts" criminalized under Penal Law Article 130 failed to revive claims under the ASA); *Leib-Podry v. Tobias*, 2024 U.S. Dist. LEXIS 63266, at *19 (S.D.N.Y. Feb. 13, 2024) (same); *Johnson v. NYU Langone Health*, 2023 U.S. Dist. LEXIS 176652, at *5-7 (S.D.N.Y. Sept. 30, 2023) (same); *see also J.S.M. v. City of Albany Dep't of Gen. Svcs.*, 83 Misc. 3d 1082, 1090 (Sup. Ct. Albany Cty. 2024) (only acts alleged to have violated Article 130 fall under the "rubric" of the ASA).

This Court previously found plaintiffs' allegations of acts they classified as sexual harassment, "grooming," psychological manipulation, emotional abuse, "food deprivation," and "sleep deprivation," as insufficient to trigger revival under the ASA because they were not accompanied by a factual averment, such as physical touch, that would give rise to an offense

---

[3] In support of its initial Rule 12 motion, Sarah Lawrence also contended that plaintiffs' reliance on the ASA was unavailing because its revival provisions should apply only to claims against plaintiffs' "abuser or their abuser's enablers," which did not include the College.  *See* Dkt. 17-1 at 7-9.  While the Court observed in the 2024 Dismissal Order that there was "some force to SLC's argument that the ASA must contain limitations beyond those that its literal language, construed broadly, would suggest" (dkt. 62 at 19), it disagreed that the statutory language supported a restricted application of the ASA's revival provisions to abusers and their enablers.  *Id.* at 15-19.  Therefore, the argument in this Memorandum will focus solely on the absence of a predicate sexual offense, which was found lacking in the original Complaint, *id.* at 20-28, and remains lacking here as well.  However, the College briefly references that prior argument so as to preserve it.

codified within Article 130. *See* Dkt. 62 at 22-24. Likewise, this Court found plaintiffs' "vague references" to "sexual abuse" too conclusory to make out an Article 130 violation. Dkt. 62 at 23; *see generally Iqbal*, 56 U.S. at 664.

Here, the Amended Complaint repeats, *verbatim*, many of the allegations which this Court previously found inadequate to revive claims under the ASA. *Compare* Dkt. 1 at pg. 1, ¶¶ 19-25, 27-30, 36-42, 129 *with* Dkt. 72 at pg. 1, ¶¶ 14-20, 22-25, 40-46, 150-51. With respect to additional acts alleged on the part of Ray, the Amended Complaint adds only the following:

- In paragraph 48 of the Amended Complaint (mirroring in large part the allegations in paragraph 44 of dkt. 1), plaintiffs replaced allegations accusing Ray of having engaged in "acts of manipulation, grooming, sexual abuse, food deprivation and sleep deprivation upon the Plaintiffs" with conclusory averments that he engaged in unspecified acts of "sexual violence against several individuals, including Plaintiffs[.]"

- Claims that Ray had "forced" plaintiffs Levin and Santos Rosario to "remove their shirts and perform excessive and strenuous physical tasks, such as hundreds of push-ups" in front of housemates, with the intent to "abuse and degrade" them. Dkt. 72 at ¶¶ 60-61.

- Claims that Ray, before unnamed persons and in an unidentified manner, "grabbed" Felicia Rosario's breasts without her consent, and with the intent to "abuse and degrade" her. Dkt. 72 at ¶¶ 63-64.

Plaintiffs continued "vague references" to "sexual abuse" and "sexual violence," with no facts beyond the labels, remain too conclusory to inform any analysis as to the presence or absence of any Article 130 violation. Dkt. 62 at 23. With respect to Ray's interactions with plaintiffs that allegedly occurred on campus, these allegations are similarly unavailing. Plaintiffs Levin and Santos Rosario allege that Ray "forced" them to perform shirtless push-ups (dkt. 72 at ¶¶ 59-60), but do not allege that Ray "forcibly touche[d] the sexual or intimate parts" of either, or that he subjected either to "sexual contact"—although those are mandatory elements of the Article 130 offenses of Forcible Touching and Sexual Abuse in the First Degree. N.Y. Penal L. § 130.52, § 130.65. Moreover, the allegation that Felica Rosario was subjected to "forcible touching" and

11

"sexual abuse in the first degree" by Ray "[d]uring the time" he was "residing in Slonim Woods"—
*i.e.*, allegedly sometime between Fall 2010 and Spring 2011 (*see, e.g.*, dkt. 72 at ¶ 156)—is
squarely contradicted by Felica Rosario's sworn testimony that she met Ray "for the first time" in
"September 2011" in an apartment in New York City. *See* D'Antonio Dec., Exs. 1, 2.

This self-serving and contradictory allegation should be disregarded.[4] *Poindexter*, 2012
U.S. Dist. LEXIS 42174, at *6; *see, e.g.*, *Luck*, 2019 U.S. Dist. LEXIS 16625, at *10-12 (on motion
to dismiss declining to credit allegations in the complaint that were contradicted by plaintiff's
sworn testimony that was attached to the complaint). Without this allegation, plaintiffs do not plead
the require Article 130 offense with respect to Felicia. Even if it were considered, moreover, the
Amended Complaint is strikingly bereft of any particulars related to the alleged touching of
plaintiff Felicia Rosario's breasts, the circumstances related to such alleged touching, or whether
such touching rises to the level of an Article 130 offense.

As was the case with respect to the original Complaint, plaintiffs' Amended Complaint
"do[es] not plead a predicate sexual offense and the ASA therefore does not revive Plaintiffs' state-
law claims against SLC."[5]  Dkt. 62 at 28; *accord*, *Druger v. Syracuse Univ.*, 207 A.D.3d 1153 (4th

---

[4] It is hard to imagine how plaintiffs could have "overlooked" and omitted this squarely
contradictory testimony from Felicia Rosario, since it promptly follows transcript excerpts from
testimony that they chose to submit on this motion.  Under Federal Rule 11, they are deemed to
have certified to this Court that, after inquiry reasonable under the circumstances, the "factual
contentions have evidentiary support." Here, those contentions most certainly do not.

[5] This Court has held that the acts alleged by plaintiffs occurring off-campus did not serve as the
predicate Article 130 offense required for the purposes of the ASA, because the allegations lacked
sufficient factual information to make out an Article 130 offense or the acts alleged did not
constitute an Article 130 offense by definition. Dkt. 62 at 23-26. This Court further held that even
if plaintiffs had "adequately pl[ed] injuries suffered as a result of conduct that would constitute a
sexual offense as defined in Article 130, [p]laintiffs nonetheless [did] not allege that SLC
proximately caused [p]laintiffs' injuries and therefore fail[ed] to allege that their state-law claims
against SLC "arise from" those injuries. Dkt. 62 at 26-28. The College adopts and preserves the
Court's finding as part of its argument here.

Dep't 2022) (A "plaintiff [i]s required to plead factual allegations related to his [or her] lack of consent in order to allege 'conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law,' and for the claims in the…complaint to thereby be 'revived' for statute of limitations purposes") (*quoting* N.Y. Civ. Prac. L. & R. § 214-g); *see also Johnson*, 2023 U.S. Dist. LEXIS 176652, at \*5-7. For these reasons, plaintiffs' state law claims against Sarah Lawrence in their Amended Complaint, pleaded as Counts II-V, should be dismissed as untimely.

## II.  PLAINTIFFS' TVPRA CLAIM IS SIMILARLY UNTIMELY

The Trafficking Victims Protection Reauthorization Act ("TVPRA") creates a civil cause of action against a perpetrator of certain trafficking offenses and those who benefit from those offenses. 18 U.S.C. § 1595. In the TVPRA, Congress expressly included a 10-year limitations period that applies to such civil claims. *Id.* § 1595(c)(1).

Plaintiffs claim that, in violation of the College's guest policy, "[w]hile residing in the on campus Slonim Woods dormitory," Ray "began his schemes which involved sex trafficking by force, fraud or coercion." Dkt. 72 at ¶¶ 130. Like their common law claims, plaintiffs' TVPRA claim accrued—at the latest—in the summer of 2011, when Ray was alleged to have relocated to Manhattan. *Id.* at ¶ 65. That claim thus became time-barred, at the latest, as of mid-2021—more than two years before plaintiffs commenced this lawsuit.

Nothing in plaintiffs' Amended Complaint suggests the TVPRA claim remains viable. First, as this Court held in the 2024 Dismissal Order, the TVPRA claim, which is governed by the statute's own, separate, Congressionally-established limitations period, is not revived by the ASA. Dkt. 62 at 31-32. This Court thus concluded that "[t]he ASA—as a state statute—cannot revive claims that are time-barred under a federal statute." Dkt. 62 at 31 (*citing Holmberg v. Ambrecht*, 327 U.S. 392, 395 (1946) ("The Congressional statute of limitations is definitive").

Second, as this Court noted in the 2024 Dismissal Order, in order to invoke any equitable toll under federal law, plaintiffs bear the burden of plausibly pleading "(1) that [they have] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way and prevented timely filing."  Dkt. 62 at 33 (*quoting Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 255 (2016)); *see also Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021) ("The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period…To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances[;] [h]e must further demonstrate that those circumstances caused him to miss the original filing deadline." (*quoting Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)).  Here, plaintiffs plead no facts even remotely suggesting that they faced any obstacle impeding assertion of their claim against the College, let alone an impediment resulting from "extraordinary circumstances."[6] Their TVPRA claim is untimely, and Count I in the Amended Complaint should be dismissed on that basis.

III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR COMMON LAW NEGLIGENCE

In addition to their untimeliness, substantively plaintiffs' negligence-based allegations fail to state a claim. As this Court stated in the 2024 Dismissal Order, plaintiffs' negligence-based claims "falter at the first element; Plaintiffs fail to plead that SLC owed them a duty."  Dkt. 62 at 39.  Their claims still fail to clear this initial, threshold hurdle.

New York courts have been explicit that colleges are not insurers of student safety, and they have "soundly disavowed" imposing liability on colleges based on the doctrine of *in loco parentis*.

---

[6] Presumably in an effort to support entitlement to an equitable toll, plaintiffs dramatically assert that SLC "turned a blind eye and ignored reports that revealed Ray was conducting a violently enforces sex and labor trafficking scheme while on campus," and "knowingly harbored Ray throughout his scheme." Dkt. 72 at ¶¶ 132-133.  These histrionic, conclusory allegations are not supported by any pleaded fact, and in all events fail to support a tolling argument.

Dkt. 62 at 39-40; *see also Eiseman v. State*, 70 N.Y.2d 175, 189-90 (1987). Colleges have no duty to shield students from the dangerous activity of others, or to shield students from their own dangerous activity which creates a risk of harm to themselves. *Rothbard v. Colgate Univ.*, 235 A.D.2d 675, 676 (3d Dep't 1997). Plaintiffs attempt to evade this longstanding principle by relying on two "exceptions"—neither of which found application previously, or finds application here.

## A.     The "School-Controlled Activity" Exception does not Apply

While a duty can arise where a college encourages students to participate in an activity *and* takes affirmative steps to supervise and control the activity, this limited "school-controlled activity" duty arises rarely, and it does not extend to most student activities, including dormitory activities. Dkt. 62 at 40 ("[T]here is no general duty to "supervise…students' conduct in their dormitory rooms.") (*citing Talbot v. N.Y. Inst. of Tech.*, 225 A.D.2d 611, 612-613 (2d Dep't 1996) and *Lloyd v. Alpha Phi Alpha Fraternity*, 1999 U.S. Dist. LEXIS 906 (N.D.N.Y. Jan. 26, 1999).

*Hores v. Sargent*, 230 A.D.2d 712 (2d Dep't 1996), where the "school-controlled activity" exception was recognized, is an instructive case in that it demonstrates the limited circumstances that will give rise to a duty in these contexts. There, the college's Office of Student Activities ("OSA"), staffed by college employees, "organized, planned, and supervised" a bicycle trip off campus. *Id*. The OSA, "among other things, examined and selected the subject bike route, prepared the bike map, operated three vans to assist bicyclists during the trip, and instructed the participants on safety issues."  Plaintiff was injured when he was struck by a vehicle while participating in the trip; under these circumstances; the Appellate Division held that the college "possessed a sufficient degree of control" over the trip, "and thus was under a duty to take reasonable precautions for the safety of participants." *Id.*; *cf. Pasquaretto v. Long Is. Univ.*, 106 A.D.3d 794, 796 (2d Dep't 2013) (dismissing negligence claim where university's alleged involvement in a fraternity's initiation did

15

not give rise to a duty to supervise); *Puentes v. Union Coll.*, 2024 U.S. Dist. LEXIS 55766, at *28-29 (N.D.N.Y. Mar. 28, 2024) ("Defendants were not organizing an activity or outing that could be potentially dangerous, such as a cycling trip").

Plaintiffs allege that SLC "invited and encouraged" students to reside on campus, "supervised" the residences, took steps to "ensure the safety and security" of those residences, "coordinated" residence programs, and "advertised" the residences as a "regulated school activity and function." Dkt. 72 at ¶¶ 26-29, 32-33, 140-145.  As support for these allegations, plaintiffs rely on the 2010-2011 Student Handbook, and excerpts from the College's Residence Life web page. Dkts. 72-1, 72-2 (Exs. A, B). But even a cursory review of those materials establishes they do not support plaintiffs' claim that the "school-controlled activity" should apply here. The Handbook excerpt does not reflect the "encouragement" plaintiffs allege; it merely states that SLC is a "residential community, with approximately 85 percent of the undergraduates residing in College Housing." Dkt. 72 at ¶ 26, n. 1.  Nor do statements in the Handbook support the related allegation that Sarah Lawrence "advertised and described the on-campus dorms as being a highly supervised and regulated school activity and function." *Id.* at ¶ 27.  Rather, that Handbook notes SLC had a trained team of Residence Life staff members, who were committed to providing a secure environment for the community—making no reference whatsoever to campus dormitories being a "highly supervised and regulated school activity." *Id.* at ¶¶ 27-28, n.2, n.3.

The Handbook demonstrates that SLC's housing program tracked the programs of virtually all residential, 4-year institutions of higher learning in the country.  Housing was offered to students (but not mandated), many availed themselves of the offer, and the College had staff and students who facilitated the arrangements and instituted reasonable security measures. In this regard, SLC was indistinguishable from Cornell, LIU, and the NY Institute of Technology—all of which have

been held, as a matter of law, to have no duty to supervise student conduct in dormitories. *See Lloyd*, 1999 U.S. Dist. LEXIS 906, at *7-9; *Pasquaretto*, 106 A.D.3d at 796; *Talbot*, 225 A.D.2d at 612-613. Indeed, "dorm life" is a generalized activity on college campuses, and not the type of particular, relatively unique student-related activity that could give rise to this very specific exception imposing a duty where none otherwise exists.

In addition, the duty at issue extends no further than taking reasonable steps to prevent injury "during the [school-sponsored] activity." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 361-62 (N.D.N.Y. 2014). Here, plaintiffs do not claim that they were "injured while taking part" in "dorm life." Rather, plaintiffs allege they were injured by Ray, a third-party criminal who was in no direct relationship with the College. The "school-controlled activity" exception thus has no application to the facts of this case. *See, e.g.*, *Lloyd*, 1999 U.S. Dist. LEXIS 906, at *7-8 (fraternity initiation activities did not impose duty on university, despite its attempts to monitor and advise on fraternity conduct, intervene in the pledging process, allowing use of its premises for fraternity activities, providing university resources in support of fraternity activities, and enabling fraternities to "maintain a presence on campus"); *Rothbard v. Colgate Univ.*, 235 A.D.2d 675, 676-77 (3d Dep't 1997) (provisions in Handbook prohibiting certain conduct at fraternity houses did impose duty on university to supervise and prevent students from engaging in the prohibited conduct).

Were the court to apply the "school-controlled activity" exception in this case, and impose a general duty on colleges to "protect" students residing in or visiting dormitories, it would effectively reinstate the *in loco parentis* relationship between resident students and their colleges, which has not been the law in this jurisdiction for many decades. *See Eiseman*, 70 N.Y.2d at 189-190. New York law in this regard is plain: courts should be particularly chary in expanding the scope of existing duties, especially where that scope previously has been proscribed. *See, e.g.*,

*Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001). Count II of the Amended Complaint fails as a matter of law.[7]

### B. Plaintiffs State no Claim against Sarah Lawrence as a Landowner

"[U]nder appropriate circumstances, a college or university may be held liable, under a theory of premises liability, for injuries sustained by a student while on campus." *Ayeni v. County of Nassau*, 18 A.D.3d 409, 410 (2d Dep't 2005); *see also Hamilton*, 96 N.Y.2d at 233 ("landowners have a duty to protect tenants, patrons or invitees from foreseeable harm caused by the criminal conduct of others while they are on the premises"). However, property owners owe a duty to exercise reasonable care to protect others only from reasonably foreseeable criminal or dangerous acts committed by third persons on the premises. *Ayani*, 18 A.D.3d at 410; *Lunia v. Katherine Gibbs School N.Y., Inc.*, 37 A.D.3d 555, 536 (2d Dep't 2007); *Maysonet v. KFC, Nat'l Management Co.*, 906 F.2d 929, 930 (2d Cir. 1990) ("Under New York law a proprietor is not liable for the intervening criminal acts of another unless such acts were reasonably foreseeable"). The duty to protect a plaintiff from foreseeable harm caused by third persons also is limited to conduct the owner "had the opportunity to control," and of which the owner "was reasonably aware." *Taft v. Connell*, 285 A.D.2d 992 (4th Dep't 2001).

The question whether a defendant breached its duty, as a property owner, "entails a determination as to whether the property owner ha[d] either actual or constructive notice of the likelihood of dangerous conduct by a third person." *Ellis v. Mildred Elly Sch.*, 245 AD2d 994, 996 (3d Dep't 1997). "[U]nanticipated third-party acts causing injury upon a [plaintiff] will generally

---

[7] Presumably in an effort to shore up this exceedingly weak claim, plaintiffs allege that SLC was aware that Ray was "living on" campus as an "unauthorized guest." Dkt. 72 at ¶¶ 150-152. Putting to the side the fact that *plaintiffs* were responsible for registering any "unauthorized guest," they rely as support for the College's alleged awareness that Ray was "residing in" Slonim Woods 9 the September 2011 email from C.D. *Id.* at ¶¶ 157-161. But that email makes no such claim.

not give rise to…liability in negligence absent actual or constructive notice of prior similar conduct. It must be established that [the defendant] authorit[y] had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated." *Brandy B. v. Eden Cent. Sch. Dist.*, 15 N.Y.3d 297, 302 (2010) (quotations omitted); *D'Amico v. Christie*, 71 N.Y.2d 76, 85 (1987) (landowners only "have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are *reasonably aware* of the need for such control") (emphasis supplied).

Moreover, the conduct of which a defendant is alleged to have notice of must be prior misconduct "of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Doe v. Abulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674, 681 (S.D.N.Y. 2014); *accord*, *Doe v. Wilhelmina Models, Inc.*, 229 A.D.3d 128, 145 (1st Dep't 2024) (in support of negligent supervision claim, plaintiffs alleged only that photoshoot would "produce particular photographs, without alleging any facts as to its knowledge of how the photographs would be obtained, or its knowledge of the propensities of any of the actors involved, including photographers"); *Geywits v. Charlotte Val. Cent. Sch. Dist.,* 98 A.D.3d 804, 805 (3d Dep't 2012) (actual or constructive notice of "prior similar conduct" is prerequisite to liability).

Finally, it is well established that *detailed factual assertions*, rather than conclusory allegations, are required to withstand a motion to dismiss. *Lafrantz v. St. Mary's Roman Cath. Church*, 2024 U.S. Dist. LEXIS 10154, at *13 (E.D.N.Y. Jan. 19, 2024) ("New York courts have held that in the context of sexual assault allegations, a plaintiff must in its complaint provide factual allegations concerning the tortfeasor's propensity for sexual assault, as well as factual allegations suggesting that the defendant knew or should have known of any such prior acts by the tortfeasor") (quotation omitted); *Cort v. Marshall's Dep't Store*, 2015 U.S. Dist. LEXIS 172611, at *14

19

(E.D.N.Y. Dec. 29, 2015) ("conclusory allegation" that defendant "knew or should have known" of assailant's propensity for conduct causing injury "d[id] not sufficiently allege that [defendant] was or should have been on notice of [assailant's] potential to commit an assault").

Here, plaintiffs allege SLC breached a duty of care to "keep [its] dormitory[ies]" and premises "safe against the reasonably foreseeable risk that an unauthorized adult guest, known to be residing in one of the school's dorm and committing acts of sexual abuse, would continue to commit acts of sexual abuse" against students and guests, including plaintiffs. Dkt. 72 at ¶¶ 154-55, 167-69, 173, 176, 178, 180. Again, the *facts* plaintiffs plead fail to square with their hyperbole.

As discussed at length above (*see* pgs. 2-5, *supra*), plaintiffs have no credible support for their assertion that SLC had actual or constructive notice that Ray was residing on campus and committing acts of sexual abuse against students. Plaintiffs' allegations regarding the location of the Slonim Woods dorm, Ray's alleged activities on campus, the College's supervision of the dorms, or the College's guest policy fail to accomplish what plaintiffs wish. *See* pgs. 2-4, *supra*. Considering identical or nearly identical allegations (*compare* dkt. 1 at ¶¶ 19-25, 27-30, 36-42 *with* dkt. 72 at ¶¶ 14-20, 22-25, 40-46), this Court held in the 2024 Dismissal Order, plaintiffs failed to plead that Ray's presence on campus should have alerted the College that he "presented a foreseeable danger." Dkt. 62 at 42.

Moreover, plaintiffs do not and cannot plausibly allege SLC was aware of Ray's criminal past or that he was allegedly engaging in criminal activity on the SLC campus. They do not plausibly allege that the College would be "on notice" that Ray's prior conviction, for interference in the transfer of custody of his children, was a harbinger of Ray's propensity to engage in acts of sexual or physical abuse, "human trafficking," or criminal behavior of the sort alleged in the Amended Complaint. Nor do they plausibly allege the College was aware Ray was "committing

acts of sexual abuse" on Sarah Lawrence property based on undated reports by unidentified persons to unidentified SLC administrators. *See* pg. 5, *supra*; Dkt. 62 at 43.

In their effort to overcome these deficiencies, plaintiffs lean heavily on the September 26 recanting email from C.D. *See* Dkt. 72-4. But for the many reasons discussed above, that reliance is misplaced. *See* pgs. 4-5, *supra*. Chief among them is that the email does not allege, and cannot fairly be read to allege, that SLC "had actual knowledge that a dangerous, adult unauthorized guest was residing in one of the school's dorms and committing acts of sexual abuse while residing there." Dkt. 72 at ¶ 176. The email's reference to an "inappropriate sexual relationship" between Ray and I.P. does not suggest (even if it were occurring) that such relationship was non-consensual, or that it constituted criminal activity. *See* pgs. 4-5, *supra*. And *nowhere* does C.D. reference a report that Ray was "residing" at Slonim Woods 9, or was an unauthorized guest. *Id.* Counts III and IV of the Amended Complaint fail, given the absence of duty, the absence of plausible allegations that the College breached that duty, or plausible allegations of proximate causation.

## IV.    PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM IS MERITLESS

To plead a negligent infliction of emotional distress ("NIED") claim under New York law, plaintiffs must allege "(1) a breach of a duty owed to the plaintiff[s]; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021); *accord Potrzeba v. Sherburne-Earlville High Sch.*, 2023 U.S. Dist. LEXIS 227159, at *32 (N.D.N.Y. Dec. 21, 2023). To succeed on an NIED claim under a "direct duty theory," where the injury alleged is of purely emotional harm, plaintiffs also must demonstrate "breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety." *Romero v. City of New York*,

21

839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012) (quotation omitted); *accord Beter v. Baughman*, 2024 U.S. Dist. LEXIS 45632, at *33-34 (S.D.N.Y. Mar. 13, 2024); *Doe v. Union Coll.*, 2020 U.S. Dist. LEXIS 38136, at *19 (N.D.N.Y. Mar. 5, 2020).

The duty in question "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996); *accord*, *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018). "'This duty is far more specific than the more generalized duty to avoid negligently injuring another.'" *Burroughs*, 325 F. Supp. 3d at 285 (quoting *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005)).

Here, plaintiffs allege that the College "breached its common-law duty as property owners to protect [SLC] students and visitors," including plaintiffs, "from the reasonably foreseeable criminal and dangerous acts being committed by Lawrence Ray," and that the purported breach "placed [plaintiffs] in fear for their safety and, consequently, [they] have suffered great emotional distress." Dkt. 72 at ¶¶ 188, 189. While this claim is time barred, and fails because the predicate breach of duty as a landowner is not plausibly pleaded (*see* Points II, III.B at pgs. 13-14 and 18-21, *supra*), the NIED fails substantively for two additional reasons.

First, plaintiffs do not, and cannot, allege the existence of a special duty because their relationship with the College is identical to the relationship enjoyed by all students and visitors. *See e.g.*, *Burroughs*, 325 F. Supp. 3d at 285 (dismissing NIED claim because plaintiff "failed to allege any special duty owed to him by defendants aside from the general duty owed to all inmates not to use excessive force"); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) (dismissing NIED claim on grounds that defendant did not owe a "special duty" to plaintiff because an employer had an obligation to treat all employees in the same manner).

Second, plaintiffs' NIED claim is duplicative of the negligence claims. *Compare* Dkt. 72 at ¶¶ 153-182 *with id.* at ¶¶ 183-190; *see also Curtis v. Gates Cmty. Chapel of Rochester, Inc.*, 2023 U.S. Dist. LEXIS 14399, at *13 (W.D.N.Y. Jan. 27, 2023) (dismissing NIED as "duplicative" because claims involved "identical conduct" and sought "the same relief"). For each of these reasons, plaintiffs' negligent infliction of emotional distress claim does not survive this motion.

## V.    PLAINTIFFS HAVE FAILED TO PLEAD A VIABLE TVPRA CLAIM

"[L]iability under the TVPRA requires that (1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152-53 (E.D.N.Y. 2020) (quotation omitted); *see also* Dkt. 62 at 45 (*quoting G.G. v. Salesforce.com, Inc*. 76 F.4th 544, 565 (7th Cir. 2023) and *citing S.J.*, 473 F. Supp. 3d at 152).

Here, plaintiffs insist that Sarah Lawrence benefitted financially from "advertising safe and secure housing to potential students," and from the receipt of "housing fees and tuition from students and parents" while turning a "blind eye" as Ray lived in a dorm and conducted and "violently enforced" a sex and labor trafficking scheme. Dkt. 72 at ¶¶ 128-35. These highly implausible allegations do not state a claim under the TVPRA.

### A.    The College did not Knowingly Financially Benefit from a TVPRA Venture

As the 2024 Dismissal Order stated, "[i]t is axiomatic that to state a claim for beneficiary liability under the TVPRA, the defendant must have received some benefit." Dkt. 62 at 46; *see also M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (plaintiff must plead that the defendant knowingly benefitted financially *from* a TVPRA venture in order to state a claim). Plaintiffs seek to satisfy this element by alleging in the Amended Complaint that

SLC received the benefit of "tuition and housing fees" from students and parents that "was at least partially derived from Ray's sex and labor trafficking enterprise." Dkt. 72 at ¶¶ 128, 134-135.

This allegation fails, for the same reasons articulated in the 2024 Dismissal Order: plaintiffs have not pleaded *facts* indicating that tuition "bore any relationship to the alleged sex and labor trafficking venture," that "Ray paid any tuition," or "that SLC would not have received those payments in the absence of the alleged sex or labor trafficking." Dkt. 62 at 46. "Because the Complaint does not give rise to the plausible inference that SLC benefitted financially or by receiving anything of value the TVPRA claim against SLC must be dismissed." *Id.* (*citing Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175-76 (9th Cir.), *cert. denied* 143 S. Ct. 491 (2022).

### B.    The College did not Participate in a Venture under the TVPRA

Plaintiffs also must plausibly allege, in support of a viable TVPRA claim, facts showing that SLC "participated" in a "venture" in violation of the Act. *M.A.*, 425 F. Supp. 3d at 969. The statute defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6). "In the absence of a direct association, [p]laintiff must allege at least a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970.

Here, plaintiffs allege the College participated in a TVPRA venture by allowing the Slonim Woods dorm to be used to facilitate unspecified acts with unidentified persons that purportedly constituted sex and labor trafficking. *See* Dkt. 72 at ¶¶ 127-136. But plaintiffs fail to plead *facts* showing that any "trafficking" occurred in the dorm. They implausibly allege that Ray physically and sexually abused them in the townhouse, but this conduct does not constitute either sex or labor trafficking. *Cf. M.A.*, 425 F. Supp. 3d at 971 (plaintiff sufficiently alleged facts showing that

defendant hotel participated in a venture under the TVPRA by renting rooms used for sex trafficking). Moreover, plaintiffs fail to allege that the College and Ray had any type of relationship, let alone one to pursue sex or labor trafficking. *Cf. Eckhart v. Fox News Network, LLC*, 2021 U.S. Dist. LEXIS 171219, at *33 (S.D.N.Y. Sept. 9, 2021) (news anchor's "professional relationship" with network "arguably qualifies as a 'venture'").

### C.    The College did not have Knowledge of Sex or Labor Trafficking

Another element of a viable TVPRA claim requires allegations that defendant "was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA." *S.J.*, 473 F. Supp. 3d at 154. The "real issue" is "whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture." *Id.* (emphasis original). For example, in *Eckhart* plaintiff pleaded that defendant "was well aware" its news anchor had engaged in "inappropriate misconduct," knew of his ongoing affair, and compelled the anchor to complete a sex rehabilitation program. 2021 U.S. Dist. LEXIS 171219, at *34. Plaintiff also pleaded it was an "open secret" that the anchor was a "serial harasser," and that several employees reported his misconduct to the network's outside investigator. *Id.* Even given these specific allegations, the Court nonetheless found that "none of the[] allegations involve[d] [the anchor] using force or fraud to obtain a commercial sex act," and that the conduct alleged did not rise to the level of sex trafficking. *Id.*

Similarly, in this case none of the pleaded conduct constitutes sex or labor trafficking, and thus by definition the College had no notice of any alleged sex or labor trafficking. This clam fails.

## CONCLUSION

For these many reasons, Sarah Lawrence College's Motion to Dismiss should in all respects be granted, and plaintiffs' Amended Complaint should be dismissed as against SLC.

Dated: January 31, 2025                          HODGSON RUSS LLP

                                                 By: _____
                                                     Thomas S. D'Antonio
                                                     Joshua M. Agins
                                                     Molly F. Plewinski*
                                                     1800 Bausch & Lomb Place
                                                     Rochester, New York 14604
                                                     Telephone: (585) 454-0700
                                                     tdantonio@hodgsonruss.com
                                                     jagins@hodgsonruss.com

                                                 *Attorneys for defendant Sarah Lawrence College*

 *—not yet admitted to
the bar of this Court

26